**STATE of Utah, Plaintiff and Appellee,**

v.

**Steve STEFANIAK, Defendant and Appellant.**

**No. 930809–CA.**

Court of Appeals of Utah.

July 20, 1995.

Nathan Hult, Logan, for appellant.

George W. Preston, Logan, for appellee.

Before ORME, BENCH, and BILLINGS, JJ.

## OPINION

ORME, Presiding Judge:

Steve Stefaniak appeals his conviction for lewdness involving a child, a class A misdemeanor, in violation of Utah Code Ann. § 76–9–702.5 (1990).[1] Having determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument," Utah R.App. P. 29(a)(3), we reverse and remand for a new trial.

## FACTS

In the summer of 1992, Stefaniak took his four step-children and one of their friends to Bear Lake. During the course of the day, Stefaniak and two of the children, C.C. and H.C., floated out on the lake on two inner tubes. After paddling a considerable distance from shore, H.C. decided to return.

---

1. The statute has since been amended, but the minor variations in phraseology are not pertinent to our analysis.

Stefaniak and C.C. continued across the lake sharing the larger of the two inner tubes.

C.C. testified that sometime after H.C. left, Stefaniak removed his swim suit. She further claimed that when boats approached, Stefaniak had her lay on top of him to prevent anyone from seeing him without clothes. She was able to see his genitals and described a flower tattoo on Stefaniak's right side just below where his belt would be. According to C.C., Stefaniak eventually put his swimming suit back on and, after realizing that they would not be able to reach the other side of the lake, he flagged down a boat and secured a ride back to shore.

Stefaniak and C.C.'s mother separated in early December, 1992, and were divorced shortly thereafter. C.C. first told her mother and natural father about the Bear Lake incident in mid-December of 1992. On December 29, C.C.'s parents took her to see Grant Bartholomew, a caseworker at the Division of Family Services.

Contrary to C.C.'s testimony, Stefaniak claimed he never removed his swimming suit. He testified that the accusations arose in the course of his rancorous separation and divorce from C.C.'s mother.

At trial, the State called three witnesses: C.C., her father, and Grant Bartholomew. Bartholomew testified that he had been a social worker for fourteen years and was now employed as supervisor of child welfare services in Box Elder County. He further testified that he had interviewed 3000 to 4000 children alleged to be victims of sexual abuse. Over defense counsel's objection, Bartholomew was permitted to testify that C.C. "volunteered information readily" and "seemed to be quite candid" during the interview. C.C.'s father testified, over defense

counsel's repeated objection, that he had listened to his daughter testify in court and she did not deviate at all from the story she had initially told him concerning Stefaniak's lewd conduct.

The jury found Stefaniak guilty of the crime charged. Stefaniak appeals, contending, inter alia, that the trial court erred in permitting the State's other witnesses to bolster C.C.'s credibility.

## COMMENTS ON VICTIM'S CREDIBILITY

■ Stefaniak contends the trial court's decision to allow Grant Bartholomew to testify as he did violated Utah Rule of Evidence 608(a) and invaded the province of the jury. We agree.[2] The admission of Bartholomew's testimony as part of the State's case-in-chief constitutes error because the witness improperly vouched for the victim's credibility. *See State v. Rimmasch,* 775 P.2d 388, 392 (Utah 1989); *State v. Iorg,* 801 P.2d 938, 939–42 (Utah App.1990).

■ In the instant case, the prosecutor asked Bartholomew to comment on C.C.'s demeanor during the interview he conducted as part of his role in investigating the allegations against Stefaniak. Bartholomew responded by stating:

> She was a fairly normal child for her age. She was pretty open in her responses to my questions. She volunteered information readily. She seemed to be quite candid about what she was telling me.

The prosecutor improperly elicited Bartholomew's comments concerning C.C.'s candor during the prior interview to suggest that C.C. was an open, honest, and credible witness.[3] *See State v. Rammel,* 721 P.2d 498,

---

2. Stefaniak also contends that the court erred in allowing the victim's father to testify that C.C.'s testimony did not deviate at all from the first time she disclosed to him the matter of Stefaniak's improper conduct. In view of our disposition concerning Bartholomew's testimony, we need not decide this issue. However, we note that Utah Rule of Evidence 608(a) prohibits opinion evidence concerning the credibility of a witness unless "the *character* of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." *Id.* (emphasis added). Lay witnesses are no more entitled

to offer opinions about credibility than are experts—Rule 608(a) applies across the board. *See* notes 3 & 4, *infra.*

3. The dissent contends that because the trial court did not determine Bartholomew was qualified to testify as an expert, he was free to comment on the credibility of the witness. As explained in note 4, while prior Utah cases have involved expert witnesses, Rule 608(a) draws no distinction between lay and expert witnesses. Nonetheless, while Bartholomew was not certi-

500 (Utah 1986). It is for the factfinder to determine witness credibility. *See State v. Workman,* 852 P.2d 981, 984 (Utah 1993). Allowing Bartholomew to testify as he did, over the objection of Stefaniak's counsel, had the potential to "usurp the fact-finding function of judge or jury." *Rimmasch,* 775 P.2d at 392. Therefore, the testimony was inadmissible.[4]

## PREJUDICE

■ Having determined that the court erred in admitting the testimony bolstering the victim's credibility, we must separately determine whether the error was prejudicial in this case. "If there is a reasonable likelihood that, absent the error, there would have been a more favorable result for the defendant, then [the] conviction must be reversed." *State v. Iorg,* 801 P.2d 938, 941 (Utah App.1990).

The State's case against Stefaniak hinged entirely on the credibility of the victim. The sole issue in dispute was whether Stefaniak removed his swimming suit, thereby exposing himself to C.C. There was no physical evidence introduced, nor was there testimony from the other children who accompanied the victim and Stefaniak on the trip to Bear Lake. The victim's report was first made several months after the incident, in the midst of domestic turmoil between the victim's mother and Stefaniak. "[T]his case depended on the jury's assessment of the victim's credibility versus the defendant's, and there is not 'other evidence [to support] the defendant's conviction' ... beyond that

which is tainted by ... improper testimony." *Id.* at 942 (quoting *State v. Rammel,* 721 P.2d 498, 501 (Utah 1986)). Accordingly, "we cannot say that absent the error there is not a reasonable likelihood of a more favorable result to the defendant."[5] *Id.*

## CONCLUSION

We reverse Stefaniak's conviction and remand for a new trial. Given our resolution of this appeal, we need not address the other issues raised by Stefaniak.

BILLINGS, J., concurs.

BENCH, Judge (dissenting):

I cannot reverse this conviction on the authority of *State v. Rimmasch,* 775 P.2d 388 (Utah 1989), and *State v. Iorg,* 801 P.2d 938 (Utah App.1990). These cases limit the circumstances under which experts can testify about a victim's credibility. In our case, neither the victim's father nor Bartholomew testified as an expert. Both testified as lay witnesses in response to an attack on the victim's character for truthfulness when defendant claimed that the victim's mother concocted the story after her marriage to defendant failed in April 1993. The prosecution tried to qualify Bartholomew as an expert, but the trial court ruled that the prosecution had not established the necessary foundation. Bartholomew was then allowed to testify not as to the victim's credibility but only that the incident was reported to him in December 1992 and that the victim did not appear to have been coached at that time. Further-

fied as an expert in the technical sense, the State established that he was the head of child welfare services in Box Elder County and had interviewed 3000 to 4000 children who allegedly had been victims of sexual abuse during his fourteen-year career as a social worker. Thus, regardless of Bartholomew's official status as a nonexpert, the jury would have regarded Bartholomew to be a witness of considerable expertise.

4. The dissent correctly points out that the cases we rely on have dealt with expert witnesses. *See State v. Rimmasch,* 775 P.2d 388 (Utah 1989); *State v. Rammel,* 721 P.2d 498 (Utah 1986); *State v. Iorg,* 801 P.2d 938 (Utah App.1990). However, all of those cases turned on Rule 608(a) of the Utah Rules of Evidence. That rule is not limited to experts, and the underlying policy behind lim-

iting opinion testimony concerning the truthfulness of witnesses is equally applicable to lay persons—"it prevents trials from being turned into contests between what would amount to modern oath-helpers who would largely usurp the fact-finding function of judge or jury." *Rimmasch,* 775 P.2d at 392.

5. The dissent makes much of the fact that C.C. was able to describe a tattoo normally hidden from view by Stefaniak's clothes. Since C.C.'s mother could easily have imparted knowledge of the tattoo to C.C., to say nothing of the fact that C.C. might simply have seen it in the course of ordinary family life, it is not likely the jury's credibility assessment turned on this detail to the exclusion of the credibility-bolstering testimony offered by Bartholomew.

more, the father testified not that the victim's story was true, but merely that the victim had consistently told him the same story. Nothing in *Rimmasch* or *Iorg* precludes this sort of testimony. I do not believe that, in admitting the testimony, the trial "court has clearly abused its discretion." *Iorg*, 801 P.2d at 939.

In any event, this case turned on whether defendant had exposed himself to the child victim. She testified, in detail, about seeing a rose tattoo on defendant's lower abdomen. When defendant took the stand, he made no effort to deny the existence of the tattoo or to explain how the victim came to know so much about it. Furthermore, in instructing the jury, the trial court reemphasized that it was the jury's exclusive duty to judge the credibility of the witnesses, and the motives they may have had to testify falsely. Under those circumstances, I do not believe "there is a reasonable likelihood that, absent [any] error [in admitting the evidence], there would have been a more favorable result for the defendant." *Id.* at 941.

The other issues raised by defendant are without merit. I would affirm the conviction.