**STATE of Utah, Plaintiff and Appellee,**

v.

**Wilbert BRYANT, Jr., Defendant and Appellant.**

No. 971170–CA.

Court of Appeals of Utah.

Aug. 13, 1998.

Edwin Stanton Wall, Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen., and J. Frederic Voros, Jr., Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and BILLINGS and JACKSON, JJ.

DAVIS, Presiding Judge:

Defendant Wilbert Bryant, Jr., appeals his jury convictions for aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1995), aggravated sexual assault, a first degree felony, in violation of Utah Code Ann. § 76–5–405 (1995) (amended 1996 & 1997), and aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1995). We affirm.

## FACTS

" 'In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict,' and recite the facts of this case accordingly." *State v. Scales*, 946 P.2d 377, 379 (Utah Ct.App.1997) (quoting *State v. Dunn*, 850 P.2d 1201, 1205–06 (Utah 1993)).

The victim is a seventy-one-year-old woman who for thirty-five years has lived and worked at the Spiking Tourist Lodge in Salt Lake City, Utah, as its manager. On March 13, 1996, at 10:30 p.m., the victim was watching television in the manager's apartment of the motel when the doorbell rang. Looking through the locked door, she recognized defendant who had rented a room the previous weekend, and assumed he intended to rent a room again. Defendant then entered the office and grabbed the victim by the arms and said, "I want your money." In a struggle, defendant pushed the victim into her living room and onto a couch and told her "that he had a gun and that he would kill [her] if [she] didn't be quiet."

Defendant jerked the victim's blouse, popping five buttons off, and ripped her pants open, pulling off a button and tearing the zipper. Defendant then removed the victim's pants and exercise stretch pants worn underneath her pants. Next, he pulled her off the couch and started pushing her toward her bedroom. Again, defendant told the victim "that he had a gun, that he would kill [her] if [she] didn't give him the money." She told him that the money was in the drawer in the office. The victim did not see a gun and "wasn't sure" if defendant had one, but testified, "[w]hen someone tells you they have one, you assume maybe they are saying that they do."

Defendant pushed the victim onto the foot of her bed. Although she continued to struggle, the victim did not scream for fear that defendant would fulfill his threat to kill her. Defendant tied the victim's hands behind her back and put a pair of pantyhose around her open mouth. Then he pushed her legs apart and put two or three of his fingers inside of her vagina for 15–30 seconds. The victim testified that he pushed her legs apart so hard "that it was like he was going to push one of my legs out of its joint." Defendant then walked out of the bedroom.

After about five minutes of effort, the victim untied her hands, removed the gag, and, in hysterics, telephoned a co-worker/friend. At that time, the victim noticed that her purse and the "folding money" from the cash drawer were gone. When the police arrived, the victim gave them defendant's name, his physical description, including a tattoo on his neck, and a description of his car. She also later identified defendant's picture from a photo array. Although personnel at the crime scene encouraged the victim to go to the hospital to learn the extent of her injuries, she was too upset and wanted only to rest. The victim testified that she was in so much pain that evening that "[she] thought [she] better not sit down in the tub for fear there was so much injury that it might cause [her] to have some problems."

Defendant was charged with the following offenses: aggravated robbery, aggravated sexual assault, aggravated kidnaping, and aggravated burglary. Defendant filed a Notice of Intention to Offer Evidence of Alibi, including the testimony of Marie and Yolanda Sellers. During jury selection, when the court asked defense counsel to state the names of the witnesses he intended to call, he said he would call Marie and Yolanda Sellers, not stating that they were alibi witnesses. However, defense counsel neither subpoenaed nor called them.

The aggravated kidnaping count was dismissed on the State's motion, but the jury convicted defendant on all other counts. The day after the guilty verdict, defense counsel filed a motion for a new trial supported by no

memorandum of law, but only by the affidavits of Marie Sellers and Yolanda Sellers incorporated by reference in the motion. Both affidavits state that defendant spent the entire evening with them drinking beer and eating pizza. However, Marie Sellers's affidavit also includes the following concluding paragraph:

A few days later after [defendant] was in jail for hitting my sister and for saying some hateful things to me, I was interviewed by the police at Yolanda's apartment. I did not tell them the truth. I told them that [defendant] had talked about robbing the old lady, because I was mad at him. He never said any such thing.

The trial court denied the motion, apparently without conducting a hearing, "for the reason that this [was] not 'newly discovered evidence.'" Also, these witnesses were known to defendant before trial, were not subpoenaed, and "there [was] no explanation in their affidavits as to why they did not appear as witnesses for the defendant at the time of trial." Defendant timely appealed.

## ISSUES

Defendant presents several issues on appeal: 1) whether he was denied effective assistance of counsel when, after filing a notice of alibi, defendant's counsel failed to subpoena the alibi witnesses and proceeded to trial without them; 2) whether the trial court erred by instructing the jury concerning the elements of aggravated robbery and aggravated sexual assault; 3) whether a law enforcement officer's recital of the victim's account of the crime was inadmissible hearsay; 4) whether the trial court committed plain error in the following instances: a) when the prosecutor elicited from the victim witness that she told a fellow worker "who had robbed us," on the ground that she testified to a legal conclusion, b) in seating the jury, and c) when the prosecutor allegedly argued his personal beliefs and opinions in closing argument; and 5) whether cumulative error deprived defendant of a fair trial.

## ANALYSIS

### A. Ineffective Assistance of Counsel

■ Defendant argues his trial counsel was ineffective for failing to use compulsory process to secure the attendance and testimony of the alibi witnesses after filing the Notice of Alibi and then proceeding to trial. Where, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law. *See State v. Ellifritz*, 835 P.2d 170, 175 (Utah Ct.App. 1992). However, "appellate review of counsel's performance must be highly deferential; otherwise the 'distorting effects of hindsight' would produce too great a temptation for courts to second-guess trial counsel's performance on the basis of an inanimate record." *State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct.App.1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)); *accord State v. Callahan*, 866 P.2d 590, 593 (Utah Ct.App. 1993).

■ "In order to bring a successful ineffective assistance of counsel claim, appellant must show that his trial counsel's performance was deficient, in that 'it fell below an objective standard of reasonableness,' and that the deficient performance prejudiced the outcome of the trial." *State v. Winward*, 941 P.2d 627, 635 (Utah Ct.App.1997) (quoting *Strickland*, 466 U.S. at 687–88, 693, 104 S.Ct. at 2064, 2067); *accord State v. Garrett*, 849 P.2d 578, 579 (Utah Ct.App.1993). In reviewing an alleged deficiency in counsel's trial performance, "we must 'indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy."'" *Garrett*, 849 P.2d at 579 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065) (citation omitted). Therefore, before we will reverse a conviction based on ineffective assistance of counsel, we must be persuaded that there was a "'lack of any conceivable tactical basis' for counsel's actions." *Id.* (quoting *State v. Moritzsky*, 771 P.2d 688, 692 (Utah Ct.App.1989)); *accord State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993). Put another way, "[i]f a rational basis for coun-

sel's performance can be articulated, [the court] will assume counsel acted competently." *Tennyson,* 850 P.2d at 468.

■ Defense counsel filed a Notice of Intention to Offer Evidence of Alibi, naming Marie Sellers, Yolanda Sellers, and an unidentified Domino's Pizza delivery person as potential witnesses. During voir dire, defense counsel identified Marie and Yolanda as potential witnesses, but not as alibi witnesses. At trial, defense counsel structured the defense around defendant's alibi, but only defendant testified for the defense. Defendant claimed that, when the crime occurred, he was with his "ex-girlfriend" Marie Sellers, his "sister-in-law" Yolanda Sellers, and Yolanda's boyfriend, Mike, at Yolanda's house, eating pizza, drinking beer, and watching the evening news.

Defendant argues that his trial counsel's failure to compel the attendance of the alibi witnesses was ineffective assistance and prejudicial because the jury expected to hear from the alibi witnesses. We disagree and hold that failure to call the alibi witnesses was not ineffective assistance because there were conceivable tactical bases for the decision.[1] Although the record is silent as to defense counsel's subjective intent regarding his failure to call defendant's potential alibi witnesses, in its brief, the State argues two rational bases for defense counsel's conduct, which support the presumption of competence and were supported in the record. The first "rational basis" is the following scenario:

> In pretrial interviews, defendant gives his counsel a false alibi, claiming to have been with the Sellers sisters on the night in

question. Based thereon, defense counsel files the notice of alibi. However, [subsequent to filing that document on July 1, 1996, even during trial], defense counsel or his investigator contacts the purported alibi witnesses, who tell him the same incriminating story that Marie told police, namely, that defendant spoke of committing the crime. Counsel proceeds with his alibi defense based solely on defendant's own testimony.[2]

Brief for Appellee, at 28. The State's second "conceivable tactical basis" is the following scenario:

> Foreseeing personal risk whether they honestly incriminate defendant or perjure themselves, the Sellers sisters make themselves scarce. Although defense counsel receives the Sellers' names and Yolanda's address from his client before trial, he is unable to locate the women despite reasonable effort and, hence, to furnish the process server with a reliable address.[3] Brief for Appellee, at 28–29. Under either scenario, after trial, defendant's need for the sisters' testimony became acute, and they were persuaded to contact defense counsel and execute exculpatory affidavits.

"Trial counsel's decision regarding the proper allocation of pretrial resources is normally a tactical decision, which this court will not overturn absent a showing of unreasonableness or prejudice." *State v. Perry,* 899 P.2d 1232, 1240 (Utah Ct.App.1995). Since " 'conceivable tactical bas[e]s' " for defense counsel's actions are apparent and have some support in the record, and defendant has not overcome the " 'strong presumption that

---

1. Because the Sellers sisters could have hurt, rather than helped, defendant's case and because of counsel's actions, it is also unlikely that failure to call them was prejudicial. Although during voir dire defense counsel announced he would call the Sellers sisters as witnesses, he did not identify them as alibi witnesses and, in his opening statement, he promised no witnesses. Also, at defense counsel's request, the prosecutor stipulated that he would not argue to the jury that they could draw any inferences from defendant's failure to call alibi witnesses, and the prosecutor honored this stipulation.

2. This scenario is supported, in part, by Marie Sellers's affidavit which states, in pertinent part:

> A few days later after [defendant] was in jail for hitting *my sister* and for saying some hateful things to me, I was interviewed by the police at Yolanda's apartment. I did not tell them the truth. I told them that [defendant] had talked about robbing the old lady, because I was mad at him. He never said any such thing.
> (Emphasis added.)

3. In fact, the prosecution had difficulty contacting the Sellers sisters. A district attorney's investigator could not interview them despite trying several times.

counsel's conduct falls within the wide range of reasonable professional assistance,'" we must assume defense counsel acted competently.[4] *Garrett,* 849 P.2d at 579 (citation omitted).

### B. The Jury Instructions

■ Defendant argues that the trial court erred in instructing the jury concerning the elements of aggravated robbery and aggravated sexual assault because the instructions held defendant answerable for offenses not supported by any facts. The standard of review for jury instructions to which counsel has objected is correctness. *See State v. Gibson,* 908 P.2d 352, 354 (Utah Ct.App. 1995), *cert. denied,* 917 P.2d 556 (Utah 1996). We hold that the trial court's ruling on the jury instructions was correct.

#### 1. Aggravated Robbery

Section 76–6–302(1) of the Utah Code sets forth the elements of aggravated robbery, in pertinent part, as follows:

(1) A person commits aggravated robbery if in the course of committing robbery, he:

(a) uses or threatens to use a dangerous weapon as defined in Section 76–1–601; [or]

(b) causes *serious bodily injury* upon another. . . .

Utah Code Ann. § 76–6–302(1) (1995) (emphasis added).

Instruction number 22 instructed the jury on both alternatives. Defendant challenges this instruction, not because it misstates the law, but because it included the "serious bodily injury" alternative when the State presented no evidence of "serious bodily injury" at trial. "Serious bodily injury," under Utah law, "means bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." *Id.* § 76–1–601(10) (1995).

■ "It is error to give an instruction if there is no evidence to support it and if it could be misleading." *State v. Standiford,* 769 P.2d 254, 264 (Utah 1988). However, in this case, the trial court committed no error because the State presented substantial evidence supporting the "serious bodily injury" instruction and defendant has not established anything to the contrary. Defendant's digital penetration injured the victim's vagina to an extent actionable under these statutes. Testimony of "loss or impairment of function" was clear and uncontradicted. The investigating nurse explained that there was more than just bruising in the vaginal area; there was a hematoma, which is "bright red blood underneath the skin," and swelling or edema.[5] She elaborated, "[A] lot of blunt trauma" is required to cause such an injury. She also was not able to examine "the vaginal vault because there was so much edema and so much pain." Further, in response to the prosecutor's question, "In your opinion, would [the victim] have lost the normal comfort and use of that vaginal area for a prolonged length of time?," the investigating nurse stated, "Yes. Like I say, I was even concerned about her ability to urinate." She also opined that such injuries would prohibit "protracted sexual use."

■ Defendant further argues that the State presented no evidence that the vagina was a "bodily member or organ." The State concedes that the investigating nurse testified that the vagina was an "orifice," not an

---

4. Defendant also argues that his trial counsel acted unreasonably because he lacked an understanding of the availability and use of compulsory process, evidenced by his statement, "We don't have much power to get people into court." However, defense counsel obviously did know how to use a subpoena. In fact, he served five subpoenas on witnesses for a pretrial hearing and five subpoenas on trial witnesses.

Additionally, defendant's contention that the prosecutor's closing argument pointed to the lack of alibi witnesses is groundless because the prosecutor's remarks were proper. *See State v. Parsons,* 781 P.2d 1275, 1284 (Utah 1989) ("Counsel for both sides have 'considerably more freedom in closing argument' and 'a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom.'" (Citations omitted.)).

5. "Edema" is defined as "an abnormal excess accumulation of serous fluid in connective tissue or in a serous cavity." *Webster's New Collegiate Dictionary* 358 (1981).

"organ." However, although this was the only testimony on this point, the jury was not required to believe the nurse's testimony. *See Holland v. Brown*, 15 Utah 2d 422, 394 P.2d 77, 79 (1964); *Page v. Federal Sec. Ins. Co.*, 8 Utah 2d 226, 332 P.2d 666, 669 (Utah 1958). The "traditional and well established rule is ... [that] the jury[ ] has the prerogative of judging credibility of witnesses and the weight to be given the evidence. This admittedly would not go so far as to permit it to arbitrarily disregard credible uncontradicted evidence." *Page*, 332 P.2d at 669. But, "[w]here there is any reasonable basis for refusing to believe a witness[, the jury is] not necessarily obliged to accept his testimony.... [F]urthermore, *they are entitled to judge the testimony in the light of their experience in the every-day affairs of life.*" *Holland*, 394 P.2d at 79 (emphasis added). We conclude that, "in light of their experience in the every-day affairs of life," the jury could disregard a portion of the nurse's testimony and conclude that the vagina is an organ or a bodily member.[6] *Id.*

Thus, we hold the trial court did not err by instructing the jury on both alternatives of aggravated robbery because the State presented sufficient evidence of "serious bodily injury" at trial and the jury could have properly concluded that the vagina is a "bodily member or organ."

### 2. Aggravated Sexual Assault

Section 76–5–405(1) of the Utah Code sets forth the elements of aggravated sexual assault, in pertinent part, as follows:

(1) A person commits aggravated sexual assault if in the course of a rape or attempted rape, object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, or forcible sexual abuse or attempted forcible sexual abuse the actor:

(a) causes bodily injury to the victim;

(b) uses or *threatens the victim by use of a dangerous weapon* as defined in Section 76–1–601; [or]

(c) compels, or attempts to compel, the victim to submit to rape, object rape, forcible sodomy, or forcible sexual abuse, by threat of kidnaping, death, or serious bodily injury to be inflicted imminently on any person ....

Utah Code Ann. § 76–5–405(1) (1995) (emphasis added).

Jury instruction number 25 contained the above alternatives for aggravated sexual assault. Defendant challenges this instruction, not because it misstates the law, but because the trial court should not have given it because "[t]he testimony was clear that no weapon was involved." Defendant asserts the legislative intent of the aggravated sexual assault statute is plain: the actor must threaten the victim, and the threat must be *"by use of a dangerous weapon."* Utah Code Ann. § 76–5–405(1)(b) (emphasis added); *see also Johnson v. Redevelopment Agency*, 913 P.2d 723, 727 (Utah 1995) ("The primary rule guiding us in statutory interpretation is that we give effect to the intent of the legislature. To discover that intent, we look first to the plain language of the statute." (Citation omitted.)). Thus, defendant argues the jury was improperly instructed because no threat was made by use of a weapon.

■ We disagree, however, with defendant and affirm the trial court's ruling that the phrase "threatens the victim by use of a dangerous weapon" does not require the actual use of a weapon. Requiring the presence of a gun to satisfy the second alternative would eliminate any distinction between the two parts of subsection (b) of section 76–5–405(1) and thus permit the first part to

---

**6.** Other authorities support the jury's conclusion. *See Gray's Anatomy* 1099 (38th ed.1995) (describing "vagina" as "the female copulatory organ"). Moreover, in other jurisdictions with similar statutes, an injury to the vagina is generally held to be an injury to an "organ" or "member" of the body. *See, e.g., Fancher v. State*, 659 S.W.2d 836, 837–38 (Tex.Crim.App.1983) (en banc) (holding evidence of injuries to skull, face, and vagina supported jury's finding of "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ"). Additionally, in other contexts, the term "organ" is used to refer to the external genitalia. *See, e.g., City of St. George v. Turner*, 860 P.2d 929, 931 (Utah 1993) (citing reference in city ordinance to "a spread eagle exposure of female genital organs"); *State v. Simmons*, 759 P.2d 1152, 1159 (Utah 1988) (Hall, C.J., concurring and dissenting) (equating " 'penetration of the labia' " with penetration of victim's "sexual organ").

swallow the second. " 'Whenever possible, statutes should be construed so that no portion is superfluous,' and, as such, they should not be read to include a pure redundancy." *State v. Candelario,* 909 P.2d 277, 278 (Utah Ct.App.1995) (quoting *Beynon v. St. George–Dixie Lodge # 1743, B.P.O.E.,* 854 P.2d 513, 518 n. 21 (Utah 1993)).

Furthermore, the propriety of the trial court's interpretation is confirmed by a subsequent amendment to section 76–5–405(1)(b). After the trial in this case, the Legislature rewrote the phrase, "threatens the victim *by* use of a dangerous weapon," to read, "threatens the victim *with* use of a dangerous weapon." *Compare* Utah Code Ann. § 76–5–405(1)(b) (Supp.1997) (emphasis added) *with id.* § 76–5–405(1)(b) (1995) (emphasis added). "An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." *In re D.B.,* 925 P.2d 178, 182 n. 5 (Utah Ct.App.1996) (citations omitted) (internal quotation marks omitted). Thus, " 'when a statute is ambiguous, amendment of the statute may indicate a legislative purpose to clarify the ambiguities in the statute rather than to change the law.' " *Id.* (quoting 1A Norman J. Singer, *Sutherland Statutory Construction* § 22.01 (5th ed.1993)). Such an amendment may "intimate that the Legislature has become aware that the earlier language could be misconstrued as defendants have done." *State v. Arbon,* 909 P.2d 1270, 1275 n. 4 (Utah Ct. App.), *cert. denied,* 916 P.2d 909 (Utah 1996).

■ Thus, we hold that section 76–5–405(1)(b) did not require the actual use of a weapon. Accordingly, because the victim testified that defendant threatened her with a gun, the trial court correctly gave jury instruction number 25, even though the victim never saw a gun.

## C. Hearsay

Defendant next argues the trial court committed prejudicial error by allowing a law enforcement officer to recite hearsay statements made by the victim.[7] "To the extent that there is no pertinent factual dispute, whether a statement is offered for the truth of the matter asserted is a question of law, to be reviewed under a correction of error standard." *State v. Olsen,* 860 P.2d 332, 335 (Utah 1993).

Defendant contends (1) that the testimony was inadmissible hearsay under Utah Rule of Evidence 802; (2) that the court admitted the officer's police report into evidence in violation of Utah Rule of Evidence 803(8)[8]; (3) that the admitted evidence impermissibly bolstered the victim's testimony in contravention of *State v. Stefaniak,* 900 P.2d 1094 (Utah Ct.App.1995); (4) that the manner in which the officer testified created the impression that he was testifying from personal experience in violation of Utah Rule of Evidence 602; and (5) that the officer's testimony violated Utah Rule of Evidence 608(b)'s proscription against introducing specific instances of conduct to support a witness's credibility.

■ However, defendant concedes that defense counsel objected only on hearsay grounds to the officer's testimony. "Trial counsel must state clearly and specifically all grounds for objection." *State v. Larsen,* 865 P.2d 1355, 1363 n. 12 (Utah 1993). Otherwise, "that issue is not properly preserved for appeal." *Id.* The objection must " 'be specific enough to give the trial court notice of the very error' " of which counsel complains. *Tolman v. Winchester Hills Water Co.,* 912 P.2d 457, 460 (Utah Ct.App.1996) (citation omitted). Because defendant objected only on hearsay grounds, he has failed to preserve his claims based on *Stefaniak* and Utah Rules of Evidence 602 and 608(b), and thus these claims, even if they were meritorious, are not properly before this

---

**7.** The prosecutor asked Officer Hogan, who participated in the initial interview of the victim, to recount what the victim said had occurred. The officer responded, "I will if I could refer to my report." Defense counsel objected on hearsay grounds. The trial court overruled defense counsel's objection. The prosecutor then asked,

"What did she tell you?" and the officer then recited at length what the victim told him.

**8.** Notwithstanding, any claim under Utah Rule of Evidence 803(8) is groundless because the police report was not offered or received into evidence.

court. Furthermore, because defendant "does not argue that 'exceptional circumstances' or 'plain error' justifies a review of the[se] issue[s]," this court will "decline to consider [them] on appeal." *State v. Pledger*, 896 P.2d 1226, 1229 n. 5 (Utah 1995).

On the hearsay issue, the State contends that the officer's challenged statement was not hearsay because it was not offered for the truth of the matter asserted. "[I]f an out-of-court statement 'is offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule.'" *Olsen*, 860 P.2d at 335 (quoting *State v. Sorensen*, 617 P.2d 333, 337 (Utah 1980)). The prosecutor stated that the victim's statements as reported by the officer were admissible to explain why the officer took the investigative steps that he did: e.g., why he did not take the victim to the hospital the night of the crime; why detectives later called for the cashbox to be fingerprinted; and why the victim's clothes were in their present state.

We agree with the State on this point. The officer's testimony was never offered as anything other than a recital of the victim's report of the offense and did not purport to represent the truth of the matter asserted. Thus, defendant's argument fails because the challenged testimony was not hearsay.

### D. Plain Error

Additionally, defendant argues the trial court committed plain error in the following instances: 1) when the trial court failed to intervene when the prosecutor elicited from the victim witness that she told a fellow worker "who had robbed us," on the ground that she testified to a legal conclusion, 2) in seating the jury, and 3) by failing to intervene when the prosecutor allegedly argued his personal beliefs and opinions in closing argument. To establish plain error, an appellant must demonstrate: "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

### 1. Testifying to a Legal Conclusion

The following colloquy occurred during the victim's direct examination:

Q Did you tell Marcie who had done this to you?

A Not at that time.

Q Okay. What happened next?

A So then she called the police and then she [came] over to the office.

Q How long after you had called her did she arrive at the office?

A ·Oh, like two or three minutes at the most.

Q Did you have a conversation with her then?

A Yes. *Then I told her who had done— who had robbed us.*

Q Who did you tell her had rob[b]ed you and sexually abused you and entered inappropriately upon your residence?

A Mr. Bryant.

(Emphasis added.) Defendant argues that the victim's testimony that she told a co-worker "who had robbed us" was plain error in that it was testimony regarding the defendant's guilt.

The Utah Rules of Evidence provide that the testimony of a lay witness is limited to opinions and inferences which are rationally based on the witness's perception and helpful to the factfinder to clearly understand the witness's testimony or to determine a fact in issue. *See* Utah R. Evid. 701. The Rules of Evidence also state that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Utah R. Evid. 704; *accord State v. Larsen*, 865 P.2d 1355, 1362 (Utah 1993). However, Rule 704 does not allow all opinions. *See Davidson v. Prince*, 813 P.2d 1225, 1231 (Utah Ct.App.1991). In *Davidson*, this court stated, " '[t]he Advisory Committee notes [to Rule 704] make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions.'" *Id.* (alteration in original) (quoting *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983)). However, the mere "semantic

characterization of ... testimony as a legal conclusion does not, without more, move the testimony outside the scope of this ultimate-issue rule." *Larsen,* 865 P.2d at 1362.

"The determination of whether [a witness's] opinion embraces an ultimate factual issue or constitutes a legal conclusion is a difficult call because '[t]here is no bright line between permissible questions under Rule 704 and those that call for overbroad legal responses.'" *State v. Larsen,* 828 P.2d 487, 493 (Utah Ct.App.1992) (quoting *Davidson,* 813 P.2d at 1231), *aff'd,* 865 P.2d 1355 (Utah 1993). In this case, the prosecutor did not ask the victim to opine as to whether the facts of this case met the legal definition of robbery, nor may her testimony reasonably be understood that way. Furthermore, this court has noted that a witness may use a legal term, such as "conspiracy," where the testimony is "factual and not a legal conclusion." *Id.* at 493 n. 8 (citing *United States v. Nixon,* 918 F.2d 895, 905 (11th Cir.1990)). Here, the victim's casual use of the word, "robbery," was factual, not legal. Thus, the trial court did not err in allowing her testimony.

### 2. Jury Selection

During voir dire, the following exchange occurred:

> THE COURT: ... Okay. Now, ladies and gentlemen, in order to serve on this jury, you must be a citizen of the United States, you must be at least 18 years of age, you must be a resident of Salt Lake County, and you must be able to read, to speak and to understand the English language. Are there any of you who do not fit within all of these qualifications? Yes, sir?
>
> JUROR NO. 12: I can't read too good.
>
> THE COURT: Your name?
>
> JUROR NO. 12: [stating name]
>
> THE COURT: Do you mind me asking what your education is ... ?
>
> JUROR NO. 12: Eighth Grade.
>
> THE COURT: Okay. Do you have any idea on what level you are able to read?
>
> JUROR NO. 12: About Seventh Grade maybe.
>
> THE COURT: Okay.

Later, when asked to give certain personal information, Juror No. 12 stated, after giving his name:

> I live out in the Magna area. I work three days a week at the Salt Lake Hilton. I am part retired. My wife ... works—she is retired but she also works three days a week. I only have a Sixth Grade education. We get our news from the newspaper and television.

Following the court's exclusion of eight jurors for cause, the court stated that "we are concerned here now with the first 16 [panelists]," i.e., eight jury seats plus four peremptories per attorney. Each counsel used all their peremptory challenges, with the prosecutor using his third strike against Juror No. 12.

After all peremptories were used, the court excused one of the remaining eight jurors because she suffered from migraine headaches. As a result, the jury was one member short, and the court added a juror from the venire to fill out the panel.

Because neither counsel had an opportunity to strike the new juror, the trial court permitted each counsel to consider whether they wanted to rescind a peremptory and use it against the new juror. As a result, the prosecutor decided to rescind the peremptory he had earlier used against Juror No. 12, and used it instead to strike the new panelist. Defense counsel stated that he "had absolutely no objection to that."

Defendant argues the trial court committed plain error by not passing the jury for cause, excusing a juror for cause after all peremptory challenges were exercised, allowing the prosecution to rescind a prior peremptory challenge, and seating Juror No. 12 who had been removed by a peremptory challenge and who either did not sufficiently understand the English language to be qualified or lied about his qualifications to sit as a juror.

■ However, the State urges us not to reach the first three issues since defendant failed to adequately brief them. We agree. The Utah Rules of Appellate Procedure require that the argument section of the brief

"contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, *with citations to the authorities, statutes, and parts of the record relied on.*" Utah R.App. P. 24(a)(9) (emphasis added). Utah courts routinely decline to consider inadequately briefed arguments. *See, e.g., State v. Wareham,* 772 P.2d 960, 966 (Utah 1989) (declining to address argument on the ground that defendant's brief "wholly lacks legal analysis and authority to support his argument"); *State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984) (same); *State v. Yates,* 834 P.2d 599, 602 (Utah Ct.App.1992) (same); *State v. Price,* 827 P.2d 247, 249 (Utah Ct.App.1992) (same). Defendant cites no authority supporting these three claims, and his brief simply asserts that these actions constitute error. Thus, we decline to reach them.

Regarding defendant's claim of error in the trial court's seating of Juror No. 12, defendant claims both plain error and ineffective assistance of counsel. However, we hold that neither plain error nor ineffective assistance of counsel applies in this context because defense counsel affirmatively authorized the procedure.

 Utah appellate courts will decline to consider a plain error argument if defense counsel made a " 'conscious decision to refrain from objecting' " or " 'led the trial court into error.' " *State v. Hall,* 946 P.2d 712, 716 (Utah Ct.App.1997) (quoting *State v. Bullock,* 791 P.2d 155, 158–59 (Utah 1989)). We hold

that this exception applies here. When asked about the rescission of the prosecution's peremptory challenge against Juror No. 12 and his placement on the jury, defense counsel stated, "I had absolutely no objection to that. I think maybe I made a suggestion along those lines, that I had no problem with it."

 Similarly, an ineffectiveness of counsel claim will fail if a "conceivable legitimate tactic or strategy can be surmised from counsel's actions." *State v. Tennyson,* 850 P.2d 461, 468 (Utah Ct.App.1993). In its brief, the State has provided a conceivable legitimate tactic for defense counsel's conduct during jury selection. The prosecutor had previously used a peremptory challenge against Juror No. 12. Thus, defense counsel may have decided not to move for his exclusion for cause because the prosecutor may have been inclined against this juror. Also, defense counsel may reasonably have considered Juror No. 12's limited education a positive, rather than a negative, factor. Thus, defendant has failed to show plain error or ineffective assistance of counsel in the seating of Juror No. 12.[9]

### 3. Prosecutorial Misconduct

Defense counsel argued in his closing argument that the victim had lied throughout trial. Defendant contends that in response, the prosecutor improperly injected his personal beliefs and opinions into his closing argument by making colloquial comments concerning the victim's credibility,[10] and as-

---

9. Furthermore, the record does not support a claim that Juror No. 12 was not able to read; rather, it establishes that he read on either a *sixth or seventh grade level* and suggests that he regularly read the newspaper. Thus, Juror No. 12 may not have been excludable anyway, and the failure to move for exclusion would not have been deficient. *See Codianna v. Morris,* 660 P.2d 1101, 1109 (Utah 1983) (" '[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.' " (citation omitted)).

10. The prosecutor's rebuttal comments in closing follow:

You know one of the tough parts about being a lawyer is sitting during the other lawyer's argument, because many times you feel like jumping up. *Because there is no such thing as a legal objection, [*"]You have to be kidding

me,["] *that kind of an objection. If I could have[,] I would have jumped up and said,* ["]You've got to be kidding.["]

For instance, Mary lied? *Give me a break.* The lady was on the stand. She doesn't want to go on. She doesn't want to reveal about the money being picked up because there was money. And the exact quote is exactly what Mr. Steele read, "And who collects it every night or every day? I'm not sure if you said when it was collected." Is this a lie?

"I don't think I need to tell you that, do I?" She's willing to tell if she's ordered to, but she doesn't want to is all that says. Is that a lie? That's a give-me-a-break objection. ["]You have got to be kidding.["] That's no more than what you ever saw on the stand. *She didn't lie once on the stand.*

serts the trial court plainly erred by not sua sponte objecting to the prosecutor's comments.

We will reverse for prosecutorial misconduct if

> "the actions or remarks of [prosecuting] counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result."

*State v. Cummins*, 839 P.2d 848, 852 (Utah Ct.App.1992) (quoting *State v. Peters*, 796 P.2d 708, 712 (Utah Ct.App.1990)) (alteration in original) (citation omitted). Further,

> a prosecutor engages in misconduct when he or she asserts personal knowledge of the facts in issue or expresses personal opinion, being "a form of unsworn, unchecked testimony [which] tend[s] to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued."

*State v. Parsons*, 781 P.2d 1275, 1284 (Utah 1989) (quoting *State v. Lafferty*, 749 P.2d 1239, 1255–56 (Utah 1988)) (alterations in original). However, "[c]ounsel for both sides have 'considerably more freedom in closing argument' and 'a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom.' " *Id.* (citations omitted). Additionally, "[a] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir.1992).

■ The prosecutor's expressions of incredulity and his comparison of the victim with Aunt Bea cannot reasonably be viewed as " 'a form of unsworn, unchecked' " factual testimony, which is the "evil to be guarded against" in these cases. *Parsons*, 781 P.2d at 1284 (citation omitted). The prosecutor's comments, though colloquial, vigorous, and

*... She didn't lie. The lady is a 70–year–old sweetheart. I think of her as Aunt Bea like on the Andy Griffith show.*

colorful, fell within the wide latitude permitted counsel in presenting closing arguments to the jury. *See State v. Tillman*, 750 P.2d 546, 560 (Utah 1987). Thus, we hold that there was no error.

### E. Cumulative Error

■ Finally, defendant argues that even if the errors committed during the course of the trial are construed to be harmless individually, they were cumulatively harmful. Under this doctrine, we will reverse a conviction if the cumulative effect of several errors undermines this court's confidence that defendant was given a fair trial. *See State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993). However, in this case, because we held that no error occurred, defendant was not deprived of a fair trial.

### CONCLUSION

First, we conclude defendant was not denied effective assistance of counsel because there were conceivable tactical bases for counsel's failing to subpoena the alibi witnesses and proceeding to trial without them. Second, we hold the trial court did not err in instructing the jury concerning the elements of aggravated robbery because there was sufficient evidence of a "serious bodily injury" and additionally, in instructing the jury concerning the elements of aggravated sexual assault because the crime does not require the actual use of a weapon. Third, we hold the trial court did not err by admitting the officer's recital of the victim's account of the crime because it was not offered for the truth of the matter asserted. Fourth, we conclude the trial court did not commit plain error in any instance. Finally, because we hold there was no error, defendant was not deprived of a fair trial and the cumulative error doctrine is not applicable.

JACKSON, J., concurs.

BILLINGS, J., concurs in the result.

(Challenged portions emphasized.)