2002 UT App 176

**STATE of Utah, Plaintiff and Appellee,**

v.

**Todd R. VAIL, Defendant and Appellant.**

**No. 20001001–CA.**

Court of Appeals of Utah.

May 23, 2002.

Kent R. Hart, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General and Christopher D. Ballard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, ORME, and THORNE.

### OPINION

THORNE, Judge.

¶ 1 Appellant Todd Vail (Vail) appeals from convictions on two counts of Sexual Abuse of a Child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1 (1999). At issue is whether the trial court violated Rule 608 of the Utah Rules of Evidence, by allowing a witness to testify as to the truthfulness and veracity of other witnesses. We reverse and remand.

### BACKGROUND

¶ 2 Vail and Tracy Ely (Ely) began living together in 1995, and were married in 1996. Ely had two young daughters, B.M. and K.E., both from previous relationships. B.M. and K.E. lived with Vail and Ely.

¶ 3 In 1999, Vail and Ely began having marital problems. While Vail and Ely attempted to work out their marital problems, Ely sent the girls to live with her mother, Sherrie Ely. In August of 1999, Vail and Ely agreed to divorce. At roughly the same time, B.M. and K.E. revealed to Sherrie Ely that Vail had sexually abused them. Sherrie told Ely, who then reported the abuse to child protective services.

¶ 4 Detective Stacey Braley (Braley) of the West Jordan Police Department investigated the allegations and interviewed both B.M. and K.E. Subsequently, Vail was charged with three counts of sexual abuse of a child. Counts one and two charged that Vail had sexually abused K.E. Count three charged that Vail had sexually abused B.M. The jury convicted Vail of sexually abusing K.E. and acquitted him on the charge that he sexually abused B.M.

¶ 5 At trial, the State called Braley to testify. On cross-examination, defense counsel questioned Braley about the factors an interviewer may rely upon to determine if a child sexual abuse victim had been coached, or was not telling the truth. Defense counsel posed the following questions to Braley regarding the general conduct of a child interview:

Defense Counsel: And you understand that there are factors that you also have to weigh in to determine whether a child has in fact been coached or is not telling something that may be true, correct?

Braley: Okay, yes.

Defense Counsel: And certainly divorce situations could raise eyebrows in certain circumstances, can't they?

Braley: Yes.

Defense Counsel: Families where the children would be siding with one parent as opposed to the other, and trying to gain favor with that parent?

Braley: Correct.

Defense Counsel: Those are indicators from your training that would cause concern to any skilled investigator about the testimony; is that a fair statement?

Braley: I would say that's a fair statement.

Defense Counsel: There are numerous other ones, too, correct?

Braley: Correct.

Defense Counsel: Including the age of the child, their experience, things like that?

Braley: There's a lot of factors, yes.

¶ 6 Defense counsel did not ask Braley whether any of the credibility indicators were present in her interview with either B.M. or K.E. On redirect examination, however, the prosecutor questioned Braley specifically about the interviews that she had conducted with B.M. and K.E. Braley's testimony was as follows:

Prosecutor: [Defense counsel] has asked you a couple of questions about indicators that you [look] for when—to tell whether a child is fabricating something or making something up. What about indicators that the child is telling the truth? What kind of indicators do you look for there?

Braley: Body language, consistency.

Prosecutor: Were you looking for these indicators with those girls?

Braley: Yes.

Prosecutor: Did you find them?

Defense Counsel: Your Honor, I'm going to object. . . .

Prosecutor: Your Honor, he opened the door. He's asked about this. He's asked about the credibility of these girls.

The Court: Let me hear from [defense counsel] first. . . .

Defense Counsel: The witness can't assess the credibility of a witness.

. . . .

Prosecutor: [O]n cross examination [defense counsel] asked her if she detected any indicators that would in his view indicate lack of trustworthiness, and I'm now asking her if she found indicators that would show a likelihood of honesty. It's a topic that he opened.

The Court: Overruled, you may ask.

Prosecutor: Did you see those indicators in this case?

Braley: I believe so.

The jury convicted Vail on two of the three sexual abuse counts. Vail appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 7 Vail argues the trial court erred by allowing Braley to testify as to B.M.'s and K.E.'s trustworthiness. In reviewing a trial court's decision to admit evidence, "[w]e review the trial court's factual findings underlying a decision to admit evidence for an abuse of discretion and the trial court's legal

conclusions for correctness." *State v. Widdison*, 2000 UT App 185, ¶ 45, 4 P.3d 100.

■ ¶ 8 Next, Vail argues the trial court erred in ordering Vail to pay restitution to B.M., although the jury did not convict him of sexually abusing her. Because Vail failed to raise this claim to the trial court, we review it for plain error. *See State v. Boyd*, 2001 UT 30, ¶ 21, 25 P.3d 985.

## ANALYSIS

¶ 9 Vail argues the trial court committed reversible error by allowing Braley to opine as to B.M.'s and K.E.'s trustworthiness and honesty. Vail argues that Braley's testimony, wherein she offered her assessment of B.M.'s and K.E.'s veracity as witnesses, violated Rule 608 of the Utah Rules of Evidence. Rule 608(a) states, "The credibility of a witness may be ... supported by evidence in the form of opinion ... only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." *Id.*

¶ 10 In *State v. Stefaniak*, 900 P.2d 1094, 1095–96 (Utah Ct.App.1995), this court conducted a two-part analysis to determine if testimony concerning a victim's credibility was sufficiently prejudicial to warrant a reversal and a new trial. The defendant in *Stefaniak* was charged with lewdness involving a child. *See id.* at 1094. At trial, the prosecutor sought the testimony of the social worker who had interviewed the victim. *See id.* at 1095. The prosecutor asked the social worker "to comment on [the victim's] demeanor during the interview." *Id.* The social worker testified that the victim was

a fairly normal child for her age. She was pretty open in her responses to my questions. She volunteered information readily. She seemed to be quite candid about what she was telling me.

*Id.*

¶ 11 On appeal, this court reversed the defendant's conviction. We concluded that the prosecutor had "improperly elicited" comments about the victim's candor, suggesting that the victim was an "open, honest, and credible witness." *Id.* We explained that the testimony was inadmissible because it had

the potential to " 'usurp the fact-finding function of judge or jury.' " *Id.* at 1096 (quoting *State v. Rimmasch*, 775 P.2d 388, 392 (Utah 1989)).

¶ 12 "Having determined that the court erred in admitting the testimony bolstering the victim's credibility," we then sought to determine "whether the error was prejudicial" to the defendant's case. *Id.* at 1096. We explained that the error would be prejudicial if " 'there is a reasonable likelihood that, absent the error, there would have been a more favorable result for the defendant.' " *Id.* (quoting *State v. Iorg*, 801 P.2d 938, 941 (Utah Ct.App.1990)).

¶ 13 We concluded in *Stefaniak* that the State's case against the defendant "hinged entirely on the credibility of the victim." *Id.* The State offered no physical evidence nor any corroborating testimony to support its case against the defendant. *See id.* Accordingly, we explained that the case against the defendant " 'depended on the jury's assessment of the victim's credibility versus the defendant's, and there is not "other evidence [to support] the defendant's conviction" ... beyond that which is tainted by ... improper testimony.' " *Id.* (quoting *Iorg*, 801 P.2d at 942 (citation omitted)).

■ ¶ 14 Initially, we address the State's argument that defense counsel "opened the door" to the prosecutor's questioning of Braley regarding B.M.'s and K.E.'s credibility as witnesses. We disagree. Defense counsel carefully inquired whether "there are factors that [an investigator] ha[s] to weigh in to determine whether a child has in fact been coached or is not telling something that may be true." Defense counsel did not inquire as to whether those factors were present in the interviews with either B.M. or K.E. Simply put, mere mention of credibility assessment factors, without a request for a personal or professional assessment of whether those factors are present in a specific interview, does not "open the door." Accordingly, we conclude that defense counsel did not "open the door," or attack the credibility of B.M. and K.E., as required under rule 608(a).

¶ 15 We therefore conclude that the prosecutor "improperly elicited [Braley's] com-

ments" concerning B.M.'s and K.E.'s trustworthiness and credibility as witnesses. *Id.* at 1095. In "[a]llowing [Braley] to testify as [s]he did, over the objection of [defense] counsel, ... [there was] the potential to 'usurp the fact-finding function of the judge or jury.'" *Id.* at 1096 (citation omitted). Braley's testimony as to whether the girls exhibited those indicators that Braley equates with trustworthiness is therefore inadmissible.

¶ 16 Finally, we address whether the error was prejudicial to Vail's case. We conclude that it was. At trial, the State offered the testimony of B.M., K.E., Ely, Sherrie Ely, and Braley. Ely testified that she never "ask[ed] the girls about inappropriate touching or anything of that nature," because she "believed in [Vail]." Ely testified that she first learned of the allegations of sexual abuse from Sherrie Ely. Both Ely and Sherrie Ely testified that Ely's parents did not approve of her marriage to Vail. Moreover, Ely testified that the sexual abuse allegations arose after B.M. and K.E. learned that Vail had moved from the home and that Vail and Ely were going to divorce. In all, the State's case was largely dependent on B.M. and K.E.'s testimony.

¶ 17 Ultimately, this matter, as in *Stefaniak*, " 'depended on the jury's assessment of the victim[s'] credibility versus the defendant's, and there is not "other evidence [to support] the defendant's conviction" ... beyond that which is tainted by ... [Braley's] improper testimony.'" *Id.* Prior to opining as to the girls' trustworthiness and honesty, Braley testified that she had conducted over 1000 interviews with child victims. Braley then clearly and unequivocally testified that both girls exhibited the indicators that she equated with trustworthiness. Accordingly, we cannot say that absent Braley's testimony bolstering B.M.'s and K.E.'s credibility as witnesses, " 'there is not a reasonable likelihood of a more favorable result to [Vail].'" *Id.* (citation omitted).

## CONCLUSION

¶ 18 We conclude that the police officer's assessment of credibility was improperly presented to the jury. We must therefore reverse Vail's conviction and remand for a new trial. Accordingly, based on our decision, we do not address Vail's argument concerning restitution.

¶ 19 I CONCUR: GREGORY K. ORME, Judge.

¶ 20 I DISSENT: RUSSELL W. BENCH, Judge.