2019 UT App 28

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
COLE MONTANA BOYLE,
Appellant.

Opinion
No. 20161037-CA
Filed February 22, 2019

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 161903658

Diana Pierson, Alexandra S. McCallum, and Robin K.
Ljungberg, Attorneys for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1　A husband (Victim) and wife (Wife) were spending the evening buying and using drugs near a homeless shelter in Salt Lake City. Alone, Victim went looking for more drugs. When he came upon Cole Montana Boyle beating a woman, Victim intervened, and Boyle then turned on Victim, stabbing him four times—once in the arm, once on top of the head, once through the nose, and, most seriously, once in the neck, slashing the carotid artery. During the ensuing investigation, Wife was recorded on a police body camera stating that Boyle had been beating up a girl. Boyle objected to the admission of the recording on the grounds that Wife's statement was hearsay. The objection was overruled. A jury convicted Boyle of aggravated

assault, and Boyle was sentenced to prison. Boyle appeals, arguing that he was prejudiced by the admission of hearsay evidence and that the trial court abused its discretion when sentencing him to prison. We affirm.

BACKGROUND[1]

*Stabbing Incident*

¶2     One evening in early January 2016, Victim and Wife drove to a light rail station near a homeless shelter in downtown Salt Lake City to buy and use drugs. Victim purchased some crack concaine from a dealer, and he and Wife smoked it together in their SUV. About thirty minutes later, Victim left the SUV to search the area for a heroin dealer.

¶3     Victim testified that after exiting his SUV, he saw Boyle, whom Victim did not know and had not seen before, "punching a girl and knocking her to the ground." Victim yelled out, "Stop, you don't do that to a girl." He stated that Boyle hit the woman in the face with his closed fist. When she fell to the ground, Boyle "got on top of her and continued to hit her." Victim testified that he "picked [Boyle] up off her and pushed him forward." Boyle "turned around, looked at [Victim], and kind of got in [Victim's] face a little bit and then walked off." As Victim was helping the woman, he saw Boyle quickly walking toward him and looking "[l]ike he wanted to fight." Victim recalled Boyle was holding "something shiny . . . . like a blade." Boyle started punching Victim in the face, and Victim threw punches back and grabbed Boyle's coat in an attempt to defend himself.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

Boyle said, "Stop, stop, please stop, cops are coming." As the two separated, Boyle lunged at Victim and stabbed him. Boyle then walked away. Victim was "really wobbly and wondering why [he] was so out of sorts." Then he noticed blood was "spraying out of [his] neck."

¶4     Wife testified that she heard Victim yell, "Hey, you don't treat women that way," about three or four minutes after Victim left the SUV. She looked up and saw Victim and Boyle pushing each other. Wife noticed a "girl" and "a lot of other people" nearby. Wife thought "everything was fine" when she saw Boyle walking away from Victim. As she was putting on her shoes so that she could go over "to see if everything was okay," Wife heard a "commotion" and looked up to see Victim and Boyle fighting. Wife then went to check on Victim at the site of the altercation.

¶5     Wife found Victim holding his neck and saying that Boyle had stabbed him. She yelled, "Call 911," but "everyone looked at [her] like [she] was crazy," so she went back to her SUV and drove it over to pick up Victim. She took him to a police officer stationed outside the homeless shelter and told the officer that Victim had been stabbed.

¶6     The officer activated his body camera on contact with Victim and Wife. He noticed Victim had "one of his hands up to the left side of his neck[,] and [he] could see there was a lot of blood." The officer put a pressure dressing on the wound and called for medical assistance. While waiting for the ambulance, Victim and Wife gave police a description of the suspect.

¶7     About a half an hour later, police officers located Boyle, who matched the description given by Victim and Wife. Boyle had injuries to his face and dried blood on his hands. Later that evening, Wife identified Boyle as the man who had attacked Victim. While being interviewed at the police station, Boyle denied having been in a fight or seeing a fight that evening. However, DNA testing later revealed Victim's blood on one of Boyle's socks.

¶8 Victim sustained four knife wounds during the fight: one to the top of his head, one through his nose, one in the right bicep, and one in his neck. A surgeon determined that the neck wound had damaged the carotid artery and required emergency surgery. Subsequently, Victim suffered six strokes and spent five to six weeks in the hospital recovering from his injuries. At the time of trial, Victim continued to suffer from numbness, lightheadedness, face drooping, and slurred speech.

¶9 Boyle was charged with attempted murder with a dangerous weapon or, in the alternative, aggravated assault with a deadly weapon.

*Trial and Sentencing*

¶10 At trial, in addition to presenting the testimony of Victim, Wife, two officers, a detective, a DNA analyst, and the emergency room physician, the State also played portions of the body camera recording of an officer's conversation with Wife and Victim. Boyle objected to the admission of the recording, arguing that (1) it contained hearsay statements from Wife and (2) it was unduly prejudicial because it carried "a lot of emotional weight." Specifically, Boyle objected to the playing of two recorded statements of Wife saying that Boyle "was beating up a girl" before he and Victim fought. The trial court overruled the objection, ruling that the recording (1) was being offered to explain the officer's actions and not for its truth and (2) was also admissible as an excited utterance. Additionally, the court gave a limiting instruction that provided, "Any statements made by [Victim and Wife] in this video are not being offered by the State for the truth of what they said but rather to show the jury why the officers did what they did when informed about or of what had happened."

¶11 Boyle did not present any evidence for his defense. Counsel argued, however, that Boyle was not guilty of attempted murder because he lacked the intent to kill Victim. Specifically, Boyle's counsel stated in closing:

> There wasn't any sufficient evidence to find a specific intent to kill. However, there is plenty of evidence of an intent to wound and injure and that's exactly what happened in this case. . . . [T]he evidence of injury applies better to the [aggravated] assault than to the attempted murder and I am confident that once you have deliberated, gone through these instructions, looked at the evidence, that you will find that my client is guilty of the alternative charge of aggravated assault and not attempted murder in this particular case.

The jury convicted Boyle of aggravated assault and determined that he used a dangerous weapon during the commission of that assault.

¶12 At sentencing, Boyle argued that jail and probation were appropriate in light of the sentencing guidelines, his remorse, and his rehabilitative needs. The State noted that although the criminal history matrix score suggested only probation for Boyle, Adult Probation and Parole (AP&P) recommended that the trial court depart from that guideline and impose a prison sentence. AP&P noted that Boyle's history of violent crimes beginning as a juvenile, his overall criminal history, his ongoing substance abuse issues, and his infliction of serious injury to Victim were of "grave concern" and indicated that Boyle posed a "grave danger to the safety of the community." The State also played several phone-call recordings from jail, over Boyle's objection, to show that Boyle was deceptive, lacking remorse, and disrespectful of Victim's plight.

¶13 The trial court sentenced Boyle to two-to-twenty years in prison. "[T]aking into consideration the injuries in this case [and Boyle's] prior record of assaultive behavior," the trial court concluded that Boyle was a "danger to the community" and it was too great a risk to put him "back out in the community." Boyle now appeals.

ISSUES AND STANDARDS OF REVIEW

¶14   The first issue is whether the trial court erred in admitting two of Wife's statements, as recorded by the police body camera, that Boyle was "beating up a girl" prior to the altercation because the statements were inadmissible hearsay. "When reviewing rulings on hearsay, we review legal questions regarding admissibility for correctness, questions of fact for clear error, and the final ruling on admissibility for abuse of discretion." *State v. Garrido*, 2013 UT App 245, ¶ 10, 314 P.3d 1014 (cleaned up). If the trial court erred in admitting Wife's recorded statements, Boyle will succeed on appeal only if he shows that he suffered prejudice because there was a "reasonable likelihood of a more favorable result" absent the statements. *See State v. McNeil*, 2013 UT App 134, ¶ 41, 302 P.3d 844 (cleaned up), *aff'd*, 2016 UT 3, 365 P.3d 699.

¶15   The second issue is whether the trial court erred by sentencing Boyle to prison instead of probation. "[W]e review a trial court's decision to deny probation under an abuse of discretion standard and will overturn a sentencing decision only if it is clear that the actions of the trial judge were so *inherently unfair* as to constitute an abuse of discretion." *State v. Killpack*, 2008 UT 49, ¶ 18, 191 P.3d 17 (cleaned up). "A court exceeds its discretion if it acts with inherent unfairness in imposing a sentence, imposes a clearly excessive sentence, or fails to consider all legally relevant factors." *State v. Epling*, 2011 UT App 229, ¶ 8, 262 P.3d 440.

ANALYSIS

I. Even if the Trial Court Erred in Admitting the Recording, Boyle Has Not Established Prejudice

¶16   For the purposes of this appeal, we assume, without deciding, that Wife's statements recorded on the body camera were inadmissible hearsay. But even if the recording was erroneously admitted, Boyle must still show prejudice to succeed

on appeal. *See State v. McNeil*, 2013 UT App 134, ¶ 41, 302 P.3d 844, *aff'd*, 2016 UT 3, 365 P.3d 699. "Trial error requires reversal only if a review of the record persuades the appellate court that without the error there was a reasonable likelihood of a more favorable result for the defendant. A reasonable likelihood of a more favorable outcome exists when the appellate court's confidence in the verdict is undermined." *Id.* (cleaned up). Boyle "has not established prejudice under this standard," *see id.*, because (1) he asked the jury to return a guilty verdict and (2) other evidence in the case was sufficient, standing alone, to convict him.

A.    Boyle's Counsel Explicitly Asked the Jury to Return a Guilty Verdict on the Aggravated Assault Count

¶17    Boyle would have been convicted even without the recording because his counsel asked the jury to return a guilty verdict on the aggravated assault charge. In his opening statement, counsel told the jury that there are a "number of facts . . . that are just simply beyond change, that will not be contested in this case." He continued to tell the jury that there was "no question" and that it was "absolutely accurate" that Boyle and Victim were "involved in a fight in which [Victim] was stabbed." And in his closing, counsel explicitly stated, "I am confident that once you have deliberated . . . [and] looked at the evidence, that you will find that my client is guilty of the alternative charge of aggravated assault and not attempted murder in this particular case." Counsel further conceded that although there was insufficient evidence of Boyle's "specific intent to kill," there was "plenty of evidence of an intent to wound and injure." We agree with Boyle's counsel on this point.

¶18    In his reply brief, however, Boyle argues that trial counsel was compelled to ask the jury to convict on the aggravated assault charge, essentially attempting to make lemonade out of a lemon—the lemon being the hearsay evidence admitted over his objection. Boyle argues:

> Counsel made no concession that absent [Wife's] statement [recorded on the body camera], a guilty verdict was warranted. Under these circumstances, all that can be read into counsel's statements is that he was doing damage control in light of the trial court's ruling. . . . This Court should place little, if any, weight on these statements in assessing prejudice.

¶19    Boyle would have us believe that the only reason his counsel asked the jury to return a guilty verdict on the aggravated assault charge is that Wife's recorded statements were so damaging that his counsel was forced to do "damage control." We find this argument unconvincing for two reasons. First, counsel had already acknowledged in his opening that Boyle was involved in the fight resulting in the stabbing of Victim. His statements at closing thus complete the arc of the trial strategy set in place at the opening. Second, in promoting the "damage control" argument, Boyle ignores the other evidence, which we identify below, arrayed against him. Indeed, as Boyle's counsel himself stated, "[T]here is plenty of evidence" of Boyle's "intent to wound and injure."

B.    Any Error in Admitting the Putative Hearsay Evidence was Harmless in Light of Other Evidence

¶20    Whether an error is harmful depends upon several factors. "These include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *McNeil*, 2013 UT App 134, ¶ 52 (cleaned up). In light of these factors, any error in admitting the two recorded statements was harmless in this case.

¶21    First, Wife's two statements on the recording that Boyle "was beating up a girl" were of little importance to the State's

case. The cause of the fight between Boyle and Victim is irrelevant to establishing that the fight occurred and that Victim was assaulted with a deadly weapon. Indeed, Boyle's defense counsel conceded at trial that the "reason for the fight is not necessarily important" except insofar as it "shed[s] light on whether there was a specific intent to kill somebody or simply hurt somebody."

¶22    Second, Wife's recorded statements were also cumulative and corroborative of other evidence admitted without objection. Wife testified that she heard Victim say, "Hey, you don't treat women that way," when she was sitting in the SUV. Victim testified that he saw Boyle "punching a girl and knocking her to the ground." In the recording, Victim stated that Boyle had been beating up a woman, and a police officer repeatedly stated in the same recording that Victim had said Boyle had been beating up a girl. With the exception of Wife's two recorded statements, all of this testimony was admitted without objection and its admission is not assailed on appeal. Indeed, when asked if he objected to the officer's statements in the recording, Boyle's counsel explicitly stated, "I don't think there's anything objectionable to what the officer said." So even if Wife's recorded statements that Boyle was attacking a woman had not been played, the jury still heard several other recorded statements to the same effect.

¶23    Third, there was other significant evidence against Boyle. As noted above, Boyle's counsel admitted in his opening statement that Boyle had been in the fight in which Victim was stabbed. A subsequent DNA test showed that blood on Boyle's sock matched Victim's DNA. When Boyle was apprehended, he had dried blood on his hands, a fresh wound on his mouth, and blood inside his nose. And when police located Boyle, he matched the description given by Victim and Wife. Thus, even without Wife's recorded statements, there is not a reasonable likelihood of a different result at trial. The strength of the State's remaining evidence would have been more than sufficient to convict Boyle of aggravated assault.

¶24    For these reasons, we conclude that any error the court committed in admitting Wife's recorded statements was harmless.

## II. The Trial Court Did Not Abuse Its Discretion in Sentencing Boyle to Prison Instead of Probation

¶25    "The sentencing decision of a trial court is reviewed for abuse of discretion." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167. Specifically, the "decision whether to grant probation is within the complete discretion of the trial court." *State v. Rhodes*, 818 P.2d 1048, 1049 (Utah Ct. App. 1991). "In general, a trial court's sentencing decision will not be overturned unless it exceeds statutory or constitutional limits, the judge failed to consider all the legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." *State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17 (cleaned up). "[A] defendant may demonstrate an abuse of discretion if he or she can show that no reasonable person would take the view adopted by the trial court." *State v. Goodluck*, 2013 UT App 263, ¶ 2, 315 P.3d 1051 (per curiam) (cleaned up).

¶26    Boyle argues on appeal that the trial court abused its discretion in sentencing him to prison. Specifically, Boyle asserts that the court failed to consider factors that favored probation. The record does not support his contention. During sentencing, the State acknowledged that Boyle's criminal history matrix scored him in the probation category. But AP&P nevertheless recommended prison, considering Boyle's criminal history, which included four previous assaults (three as a juvenile[2] and one as an adult), his ongoing substance abuse issues, and the seriousness of Victim's injuries. Weighing these factors, AP&P

---

2. A court may consider a record of delinquency in sentencing. *See State v. McClendon*, 611 P.2d 728, 729 (Utah 1980) (stating that the inadmissibility of a record of delinquency "is not a bar to [its] consideration in the sentencing phase of a criminal case").

concluded that Boyle posed a "grave danger to the safety of the community." The court also acknowledged that Boyle did not score high on the matrix. But taking into consideration Boyle's history of "assaultive behavior" and the seriousness of Victim's injuries, the trial court agreed with AP&P's recommendation and concluded that Boyle posed too great a risk to be put "back out in the community."

¶27 Boyle also argues that the trial court abused its discretion by basing its sentencing decision on "unreliable and irrelevant information" in the jail recordings. As a threshold matter, we note that the trial court appears to have based its sentencing decision primarily on Boyle's history of criminal behavior and the seriousness of Victim's injuries. The record gives no indication that the jail recordings played any material role in sentencing.[3] Rather, the record shows that the court relied on AP&P's conclusion that Boyle posed a "grave danger to the safety of the community" when it sentenced him. Furthermore, Boyle does not challenge that he is speaking on the jail recordings, nor does he assert that the recordings are incomplete or inaccurate. Accordingly, Boyle's argument that the recordings are unreliable borders on frivolous. And with regard to

---

3. "To establish that a district court abused its discretion by relying on irrelevant information, the defendant must show (1) evidence of reliance, such as an affirmative representation in the record that the judge actually relied on the specific information in reaching her decision, and (2) that the information she relied upon was irrelevant." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985. Even if the jail recordings were irrelevant, Boyle has not offered any evidence, apart from the fact that the court was "exposed to approximately 12 minutes of recordings . . . during the sentencing hearing," that the trial court relied on the information in the recording in reaching its decision. And "an appellate court cannot presume there is evidence of reliance from a silent record or mere introduction of potentially irrelevant information." *Id.*

relevance, the jail recordings indicate that Boyle (1) read books on how to be deceptive, (2) was using drugs while in custody, (3) regarded Victim as just a "crack head," (4) was a gang member, and (5) intended to retaliate against a witness. The recordings are relevant precisely because they directly challenge Boyle's assertion that he was "remorseful, oriented toward positive change, and amenable to probation and treatment."[4] Thus, the jail recordings were both relevant and reliable, and the trial court did not abuse its discretion in considering them during sentencing.

¶28    Because the record supports the conclusion that Boyle was a danger to the community, we determine that the trial

---

4. Evidence that is inadmissible during the guilt phase of a trial may be admissible at sentencing. *See State v. Howell*, 707 P.2d 115, 117 (Utah 1985). "This includes the defendant's criminal history, conduct at trial, and other relevant behavior." *State v. Lingmann*, 2014 UT App 45, ¶ 39, 320 P.3d 1063. Indeed,

> [trial] courts have historically been afforded broad discretion when it comes to sentencing. The U.S. Supreme Court has stated . . . [that] both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.

*State v. Perea*, 2013 UT 68, ¶ 113, 322 P.3d 624 (cleaned up). The United States Supreme Court has further clarified that in "determining what sentence to impose . . . . a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972).

court acted well within its discretion and considered the relevant factors when it imposed the prison sentence.

## CONCLUSION

¶29 Because Boyle was not prejudiced by the admission of Wife's recorded statements, we conclude that any error the trial court committed in that regard was harmless. We also conclude that the court did not abuse its discretion in sentencing Boyle to prison instead of probation.

¶30 Affirmed.

_____