**2020 UT App 132**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEVIN ERIC LEWIS,
Appellant.

Opinion
No. 20181010-CA
Filed September 24, 2020

Sixth District Court, Kanab Department
The Honorable Wallace A. Lee
No. 171600052

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1     Devin Eric Lewis appeals his conviction for forcible sodomy. He argues the district court erred in admitting trial testimony from law enforcement personnel that he contends wrongly bolstered the credibility of witnesses and opined on the weight of certain evidence. He also argues the court erred when it denied his motion for directed verdict based on insufficient evidence. We affirm.

BACKGROUND[1]

¶2     On May 27, 2017, Lewis and his wife (Wife) went to a cabin to celebrate their wedding anniversary. They were joined by their children, friends, and extended family, including Wife's stepsister (Victim).

¶3     The group arrived at the cabin around noon; the adults soon began drinking alcohol and continued drinking throughout the evening until around 10:30 p.m. when people started getting ready for bed.

¶4     Concerned she would have to wait in line for the bathroom, Victim asked a friend to accompany her to the woods behind the cabin so she could relieve herself. On the way back to the cabin, Victim tripped and fell to the ground. She signaled to her friend that she was "okay," and her friend continued to the cabin. As Victim started to stand up, she felt someone behind her, pulling her up. Victim was so scared that she "blacked out." Victim testified that when she regained consciousness, she was lying on her back and Lewis was on top of her, "raping [her] vaginally."

¶5     Lewis remained on top of Victim until his phone began ringing. As he tried to silence it, Victim used her left leg "to push off of the ground . . . underneath him." She was "barely able to get loose" before Lewis "grabbed [her] shoulders," "turned [her] over onto [her] stomach," and "started raping [her] anally." Lewis continued until his phone rang again, at which point Victim freed herself and ran farther into the woods.

---

1. "We recite the facts in a light most favorable to the jury verdict. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Vallejo*, 2019 UT 38, ¶ 2 n.1, 449 P.3d 39 (quotation simplified).

¶6 Wife and Victim's friend eventually found Victim sitting in the woods next to a fallen tree. She was "hysterically crying" and would not explain what had happened other than to repeatedly state, "I'm so sorry." When Wife asked Victim if Lewis had done this to her, she responded, "[Y]es." Wife called the police.

¶7 Two officers arrived on scene. One officer, a sergeant (Sergeant), approached Victim to ask what had happened. She was "extremely hysterical," crying, and did not want to talk. Eventually, she told Sergeant that on her way back to the cabin she "tripped over a log." While waiting for one of her friends to assist her in getting up, Lewis "forced [her] to the ground" while calling her name in "a soft tone voice." Lewis proceeded "to take off her pants" and "forcefully" have anal and vaginal sex with her, even after she told him to stop. Victim also told Sergeant she had been drinking and on a scale of one to ten, with one being not at all drunk, she was "probably a seven."

¶8 Sergeant transported Victim and one of her friends to the hospital, which was forty-five minutes from the cabin. During the drive, Victim never stopped crying. At the hospital Victim complained of pain in her neck and anal area. A nurse (Nurse) conducted a sexual assault exam that included a head-to-toe assessment and a cervical exam. During the exam Victim was "very withdrawn" and "didn't make eye contact." When asked to explain what had happened, her response was "disjointed." She spoke in short sentences that did not "flow smoothly" and she did not recount the events chronologically.

¶9 The head-to-toe assessment revealed "numerous abrasions on [Victim's] back and her lower legs," "tenderness to the base of her spine," and "new bruise[s] forming on her upper arm." At trial Nurse testified that these findings were consistent with Victim's account that she "was thrown to the ground" and "held down."

¶10    Nurse also testified that the injuries found during Victim's cervical exam were consistent with her statement that she was held "against the ground [while] being penetrated." Specifically, Nurse found a stick and a brown smear in Victim's perineal area; debris that looked like bark in her cervix; and dark spots and light brown staining around her anus that could be blood, stool, or clumps of dirt. Victim's vagina and perineum had a "slit" and several abrasions.

¶11    The State charged Lewis with rape and forcible sodomy, both first-degree felonies, and intoxication, a class-C misdemeanor. At trial, Sergeant testified for the State about his interactions with Victim on the night of the incident. Sergeant further testified about his experience working on cases involving "either sexual assault victims or victims that have experienced a lot of trauma." He opined that based on his training and experience working on between 200 and 300 assault cases, victims' accounts of an incident commonly vary. Lewis objected to this testimony, arguing that it was "bolstering" because Sergeant was "essentially testifying that any victim who has a story that's not consistent is still to be believed." The district court overruled the objection, reasoning that Sergeant could answer "based on his training and experience."

¶12    A detective (Detective) also testified for the State and explained that over the course of his career, he investigated hundreds of sexual assault cases and interviewed hundreds of sexual assault victims. When the State asked whether there are variations when victims give multiple accounts of their assaults, Detective explained that variations occur and "can be" common "depend[ing] on the level of trauma." Lewis objected, arguing there was no foundation for Detective to "opine on how people behave." The court overruled the objection, reasoning that Detective was qualified to give that opinion based on his experience conducting "hundreds of these interviews before." Then Detective testified he was not surprised to hear "some

slight variations" between Victim's accounts of the assault. Lewis did not object to this testimony.

¶13    Lewis testified in his own defense, claiming that he engaged in vaginal and anal intercourse with Victim and that the activity was consensual. He testified that he and Victim were in the woods together and were "really drunk." They "started kissing" then began having sex after they "tripped and fell" and "couldn't stand up." But Lewis was unsure how he and Victim became undressed, nor could he recall what positions they were in when they had sex or whether the vaginal or anal sex came first. Nor could he remember any phone calls or reaching for his phone, and he admitted he and Victim exchanged no words during the encounter. On cross-examination, Lewis testified he could not remember "intentionally" having anal sex with Victim and stated he was unsure whether they kissed while having anal sex.

¶14    After the close of the State's case, Lewis moved for a directed verdict on all counts, asserting the State failed to "make a prima facie case." The district court denied the motion, and the jury convicted Lewis of forcible sodomy and intoxication, but acquitted him of rape. Lewis timely appeals his forcible sodomy conviction.

ISSUES AND STANDARDS OF REVIEW

¶15    Lewis first argues the district court erred in admitting testimony from Sergeant and Detective that he claims impermissibly bolstered Victim's credibility and opined on the weight of the evidence. We review preserved claims challenging the district court's admission of testimony for an abuse of discretion. *State v. Iorg*, 801 P.2d 938, 939 (Utah Ct. App. 1990). We consider unpreserved claims only if the defendant identifies an applicable exception to the preservation rule. *State v. Cegers*,

2019 UT App 54, ¶ 17, 440 P.3d 924; *see also State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443.

¶16 Lewis next argues the district court erred when it denied his motion for directed verdict based on insufficient evidence. "We review a [district] court's ruling on a motion for directed verdict for correctness." *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168. "We will uphold the [district] court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified).

## ANALYSIS

### I. Trial Testimony of Sergeant and Detective

¶17 Lewis first argues the district court improperly admitted the testimony of Sergeant and Detective in which they (A) "bolstered the credibility of [Victim]" and (B) "opined about the weight of the evidence and guilt of [Lewis]."[2] We address each argument in turn.

---

2. Our conclusion that the testimony did not violate rule 608(b) of the Utah Rules of Evidence should not be misinterpreted as a determination that the evidence was necessarily admissible. Such evidence potentially runs afoul of *State v. Rammel*, 721 P.2d 498 (Utah 1986), and *State v. Iorg*, 801 P.2d 938 (Utah Ct. App. 1990), which exclude anecdotal statistical evidence concerning matters not susceptible to quantitative analysis, especially where no statistics or analysis are proffered. *See Rammel*, 721 P.2d at 501; *Iorg*, 801 P.2d at 941. Additionally, when expressed in the form of an opinion based on training and experience, rule 702 on

(continued…)

A.      Improper Bolstering

1.      Sergeant's Testimony Regarding the Prevalence of Variations in Witness Statements

¶18      Lewis asserts the district court erred in admitting Sergeant's testimony that sexual assault victims commonly give multiple statements and those statements commonly have variations. Lewis argues this testimony improperly bolstered Victim's credibility in violation of rule 608(a) of the Utah Rules of Evidence and that Sergeant's testimony in this regard was prejudicial. We disagree.

¶19      At trial, Sergeant testified about his training and experience working with assault victims. He testified he had attended multiple sexual assault trainings and had worked on "upwards of 500" cases involving "sexual assault victims or victims that have experienced a lot of trauma."

¶20      After eliciting testimony about Sergeant's experience, the State asked him whether the victims in these cases "have to give their account multiple times," to which he responded, "Yes." The State then asked, "[I]s it common for victims' accounts to

_____

(…continued)

expert testimony may come into play. And as with all evidence, objections might be raised as to relevance or because this type of testimony may have little probative value that could be substantially outweighed by the danger of unfair prejudice. *See* Utah R. Evid. 401; *id.* R. 403; *State v. Burnett*, 2018 UT App 80, ¶ 36, 427 P.3d 288 ("Much of [the e]xpert's trial testimony in this case is inadmissible [bolstering] . . . because its potential for prejudice substantially outweighs its probative value." (quotation simplified)); *Iorg*, 801 P.2d at 941 (holding the district court erred in allowing bolstering testimony because it was not more probative than prejudicial).

sometimes have variations?" Lewis objected, arguing the question implied "that any victim who has a story that's not consistent is still to be believed and that's just bolstering." The district court overruled the objection, reasoning that Sergeant could answer "based on his training and experience." Sergeant responded, "That is correct . . . ." The State concedes that Lewis's trial objection was sufficiently specific to preserve this issue for our review.

¶21   It is the exclusive province of the jury to determine the credibility of witnesses. *E.g.*, *State v. Thompson*, 2014 UT App 14, ¶ 64, 318 P.3d 1221. Although rule 608 "permits testimony concerning a witness's general character or reputation for truthfulness," it "prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Adams*, 2000 UT 42, ¶ 11, 5 P.3d 642 (quotation simplified). Accordingly, admission of testimony that bolsters the credibility of another witness's testimony on a particular occasion is improper. And when such testimony is prejudicial, its admission requires reversal. *State v. Boyle*, 2019 UT App 28, ¶ 16, 440 P.3d 720.

¶22   This court recently addressed bolstering testimony in *State v. Cegers*, 2019 UT App 54, 440 P.3d 924. In that case, the defendant was convicted of sexually abusing his girlfriend's daughter. *Id.* ¶ 1. On appeal, he challenged the district court's admission of testimony from the victim's high school counselor, arguing that it impermissibly bolstered the victim's credibility. *Id.* ¶ 2. At trial, the "counselor testified that she did not believe that [the victim] fabricated the allegations against Cegers to receive a school scholarship." *Id.* This court held that "[b]ecause this testimony offered an opinion as to [the victim's] truthfulness on a particular occasion, it constituted impermissible bolstering." *Id.*

¶23   The holding in *Cegers* is consistent with other cases in which this court has found bolstering. For example, in *State v.*

*Stefaniak*, 900 P.2d 1094 (Utah Ct. App. 1995), this court held it was improper to admit testimony from a social worker that the victim "seemed to be quite candid" when describing the defendant's conduct. *Id.* at 1095. It reasoned that the social worker's description of the victim as "candid" improperly suggested the victim "was an open, honest, and credible witness." *Id.*

¶24　Similarly, in *State v. Bragg*, 2013 UT App 282, 317 P.3d 452, an officer testified that the victim in an aggravated-sexual-abuse-of-a-child case appeared "genuine" during her police interview. *Id.* ¶ 31. This court held that the testimony constituted an improper direct comment on the victim's truthfulness on a specific occasion in contravention of rule 608(a). *Id.*

¶25　In contrast, in *State v. Adams*, 2000 UT 42, 5 P.3d 642, a psychologist testified regarding a sexual abuse victim's general cognitive ability and opined that it was "probably not likely" she "could be coached to tell, or was sophisticated enough to make up, the story alleged [t]here." *Id.* ¶¶ 6, 11, 13. Our supreme court held the testimony did not run afoul of rule 608, stating that the rule "only bars direct testimony regarding the truthfulness of a witness on a particular occasion." *Id.* ¶ 14 (quotation simplified). The court further observed that the witness in that case (1) "did not offer a direct opinion of [the victim's] truthfulness," (2) "did not offer a subjective credibility determination that [the victim] was telling the truth," and (3) did not "completely rule out the possibility that [the victim] could have lied about th[e] incident." *Id.* ¶ 13. Based on those observations, the court held the testimony was "not the equivalent of an affirmative statement that [the victim] was in fact telling the truth about the alleged abuse." *Id.*

¶26　This case is distinguishable from *Cegers*, *Stefaniak*, and *Bragg* but is similar to *Adams*. Unlike the witnesses in *Cegers*, *Stefaniak*, and *Bragg*, Sergeant did not opine about Victim's

truthfulness on a particular occasion. Rather, he testified only that in his professional experience, it is not uncommon to see variations in the statements of victims who give multiple accounts of their assault. Unlike the counselor in *Cegers*, Sergeant did not testify that Victim did not fabricate her allegations. Unlike the witness in *Stefaniak*, Sergeant did not describe Victim as "candid." And unlike the witness in *Bragg*, Sergeant did not describe Victim as "genuine."[3] In each of those cases, the testimony held to constitute impermissible bolstering included the witness's opinion as to "the truthfulness of a witness on a particular occasion." *Id.* ¶ 14 (quotation simplified). In contrast, here, Sergeant merely described his observation that in other cases there are often variations among a victim's statements when multiple accounts are given. As in *Adams*, he did not directly opine on Victim's credibility, he did not offer a subjective credibility determination that Victim was telling the truth, and he did not rule out the possibility that Victim could have been untruthful. It was left to the jury to determine whether Victim was telling the truth in her differing accounts, informed by the knowledge that varying accounts are not uncommon in similar circumstances.

2.     Detective's Testimony Regarding Variations in Witness Statements

¶27     Sergeant was not the only witness to testify about the variations in multiple statements made by victims of sexual abuse. The State also called Detective as a witness. Detective testified he had interviewed hundreds of victims of sex crimes over his decades-long career. He explained that "depend[ing] on the level of trauma," when a victim gives multiple accounts of an assault it "can be" common

---

3. Indeed, the prosecution asked questions directly on these points, and Lewis's objections thereto were sustained.

for those accounts to vary, and he was not surprised to hear there were "some slight variations" between Victim's accounts of the assault. Lewis objected based on a lack of foundation. He did not object that Detective's comments were improper bolstering. But on appeal, Lewis asserts that Detective's testimony regarding his observation of variations among victims' statements constituted improper bolstering. The State responds that Lewis failed to preserve this argument in the district court. We agree.

¶28   To preserve an argument of error in the admission of testimony for appeal, "a defendant must raise a timely objection to the [district] court in clear and specific terms." *State v. Smedley*, 2003 UT App 79, ¶ 10, 67 P.3d 1005 (quotation simplified). "Importantly, the grounds for the objection must be distinctly and specifically stated." *Id.* (quotation simplified). If an objection is made but does not include a specific ground, that "theory cannot be raised on appeal." *Id.* (quotation simplified). And absent a claim that "plain error or exceptional circumstances justify our review, the issue is waived." *State v. Martin*, 2017 UT 63, ¶ 26, 423 P.3d 1254.

¶29   Lewis makes two passing references to plain error with regard to his bolstering challenge. "To prevail on a plain error claim, an appellant must show that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful . . . ." *State v. Almaguer*, 2020 UT App 117, ¶ 11 (quotation simplified). And although Lewis asserts error and resulting harm, he does not argue why the alleged error should have been obvious to the district court. We therefore do not address these inadequately briefed claims. *See State v. Waldoch*, 2016 UT App 56, ¶ 6, 370 P.3d 580 (declining to undertake plain error review where the appellant "fail[ed] to explain why th[e] alleged error should have been obvious to the [district] court").

¶30   Because Lewis does not argue that plain error or exceptional circumstances justify our review, the issue is waived.

B.     Sergeant's and Detective's Testimonies Regarding the Weight of the Evidence

¶31   Lewis next asserts the district court erred in admitting testimony from both Sergeant and Detective as to the weight of the evidence and their opinions on his guilt. The State responds that Lewis failed to preserve either of these claims and, in any event, the court did not err in admitting the challenged testimony. Finally, the State asserts that even if the court erred in admitting the testimony, Lewis cannot establish prejudice. We agree with the State.

¶32   Appellate courts "generally will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (quotation simplified). "To provide the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Id.* (quotation simplified). "A proper objection puts the judge on notice of the asserted error and allows the opportunity for correction at that time in the course of the proceeding." *State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276 (quotation simplified).

¶33   At trial, Sergeant was questioned about evidence he collected from Lewis as Lewis was booked into jail. Sergeant testified he took pictures of Lewis and his clothing and observed what appeared to be blood and feces on the clothing, but he did not perform forensic tests to confirm his suspicions. The State then asked, "With all the interviews you did and the pictures and everything . . . , was there anything . . . that you felt like was

either inconsistent or would cause you concern about there being a sexual assault?" Lewis objected, arguing the question "goes to the ultimate issue" and "that's a province for the jury." The district court overruled the objection, reasoning that the answer "has to do with [Sergeant's] investigation about what his beliefs were in his investigation," and that it was "not calling for him to talk about whether anyone was truthful or untruthful," which was the jury's "decision to make."

¶34 Similarly, during Detective's redirect examination, the State inquired whether there was "anything fishy or out of the ordinary at the conclusion of [Detective's] investigation that would have caused [him] not to charge [Lewis]." Detective responded, "No," and Lewis did not object.

¶35 Based on the foregoing, we conclude Lewis did not preserve the claims he now raises. On appeal, he argues the court erred in admitting testimony from Sergeant and Detective because their testimony constituted improper comments on the evidence. But he did not raise that objection to the district court. Lewis did not object to the question asked of Detective, and his only objection to the question asked of Sergeant was that it went "to the ultimate issue," which is "a province for the jury." But he does not argue the same on appeal.

¶36 Because Lewis did not preserve the objections to Detective's and Sergeant's testimonies he now raises, we review them only for plain error. *See Patterson*, 2011 UT 68, ¶ 13. As explained above, to demonstrate plain error, Lewis must establish that "(i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful." *State v. Almaguer*, 2020 UT App 117, ¶ 11 (quotation simplified). "If any one of these requirements is not met, plain error is not established." *Dean*, 2004 UT 63, ¶ 15 (quotation simplified).

¶37 Because Lewis must satisfy all three requirements to succeed on his claim, we do not reach the issue of whether the

testimony was improperly admitted, because he has failed to demonstrate that any alleged error was harmful. For an error to be harmful, it "must be shown to have been of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant." *Johnson*, 2017 UT 76, ¶ 21 (quotation simplified). This test "is equivalent to the prejudice test applied in assessing claims of ineffective assistance of counsel." *Dean*, 2004 UT 63, ¶ 22. "In determining if the [error] was prejudicial, we determine whether there is a reasonable probability that, but for the alleged error, the outcome in the case would have been different." *Johnson*, 2017 UT 76, ¶ 21 (quotation simplified).

¶38 Lewis asserts "there is more than a reasonable likelihood that, absent the admission of . . . the improper testimony of [Sergeant] in which he opines about the evidentiary support for the charges, there would have been a more favorable result." This is so, he argues, because the State's case against him "hinged almost entirely on the credibility of" Victim's testimony and "[n]o one could corroborate . . . her story as the sole witness to the alleged incident."

¶39 We disagree. Lewis admitted having vaginal and anal sex with Victim. Thus, the only contested issues at trial were whether he acted without Victim's consent and whether he was at least reckless as to her lack of consent.[4] And there was ample evidence supporting Victim's testimony as to each issue.

---

4. To convict Lewis of forcible sodomy, the jury was required to find that he "[i]ntentionally, knowingly, or recklessly" had anal sex with Victim "without [her] consent" and that he "acted with intent, knowledge or recklessness" with regard to her lack of consent. *See* Utah Code Ann. § 76-5-403 (LexisNexis Supp. 2019); *id.* § 76-2-101.

¶40　First, several witnesses testified regarding Victim's emotional state after she was discovered in the woods following her encounter with Lewis. Two of Victim's friends, who had known Victim "her whole life," testified that her behavior was unusual. One friend explained that Victim was "hysterical" and she had "never seen [Victim] the way she was that night." The other friend similarly testified she had never seen Victim so frightened. And Wife testified that when she found Victim, Victim was "completely terrified," "crying," and did not want anyone to approach her. Indeed, after observing Victim's emotional state—but before asking her for details about what happened—Wife confronted Lewis, asking if he had "just rap[ed]" Victim. The clear inference from these observations of Victim's emotional state following the encounter with Lewis was that it was traumatic and not consensual.

¶41　Second, Nurse testified that her findings from Victim's sexual assault exam were consistent with Victim's statement that she was held against the ground and penetrated. Specifically, Victim had "numerous abrasions on her back and her lower legs," "tenderness to the base of her spine," "new bruise[s] forming on her upper arm," and "a lot of debris on her clothes and in her hair." Further, Victim's vagina was covered with multiple abrasions and a "slit," injuries that typically occur when a vagina is not adequately lubricated, and are "more likely . . . if the individual is less prepared for what's happening."

¶42　Third, Lewis's own testimony regarding the encounter suggested a lack of consent and certainly gave rise to the inference that he was at least reckless with regard to Victim's lack of consent. It was clear from Lewis's testimony that he was severely intoxicated at the time of the incident. He testified he and Victim walked toward one another, met and "started kissing," but then tripped and fell and were unable to stand up again because they were drunk. But Lewis was unable to recall what positions they were in when they had sex, could not recall

if the vaginal or anal sex came first, and could not even remember receiving any phone calls or reaching for his phone. Lewis admitted he and Victim exchanged no words but maintained they were kissing the entire time. On cross-examination, Lewis could not even remember having anal sex with Victim and stated he was unsure if they kissed while having anal sex.

¶43   The jury was not faced with considering Victim's credibility in a vacuum. The evidence describing Victim's traumatized emotional state, as well as physical evidence obtained from her medical exam, was compelling and corroborated her testimony that she did not consent to the anal sex and Lewis was at least reckless with regard to her lack of consent. And Lewis's own testimony was devoid of any credible suggestion that Victim in fact consented. We therefore conclude there is no reasonable likelihood that the outcome would have been different if the disputed testimony had been excluded. As a result, Lewis has not established prejudice and his claim fails.

## II. Sufficiency of the Evidence

¶44   Lewis next argues the district court erred when it denied his motion for directed verdict based on insufficient evidence. He contends Victim's testimony contained "substantial inconsistencies and conflicts as [to] a material element of the crime charged" and the evidence accordingly was insufficient to support the verdict. The State contends this argument is unpreserved because Lewis failed to sufficiently develop it when he moved the district court for a directed verdict.

¶45   We disagree with the State's preservation argument. Lewis moved for a directed verdict in the district court, arguing that the State failed "to make a prima facie case on all three counts." The court denied the motion, reasoning that based on the evidence, "the State ha[d] made a prima facie case for each of the crimes charged, rape, forcible sodomy, and intoxication." In

so ruling, the court plainly recognized that it understood Lewis's motion as specifically addressing the sufficiency of the evidence supporting the forcible sodomy charge. Because the court was given the opportunity to rule on the issue Lewis now raises on appeal, it was properly preserved. *See State v. Noor*, 2012 UT App 187, ¶ 5, 283 P.3d 543. We accordingly review Lewis's claim that the evidence on lack of consent was insufficient to support the jury's verdict on the merits.[5]

---

5. Citing *State v. Robbins*, 2009 UT 23, 210 P.3d 288, Lewis also suggests in passing that we may reverse a jury verdict when "the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." *See id.* ¶ 14. It is unclear whether this reference constitutes an attempt to argue that the inconsistencies in Victim's statements rendered her testimony "inherently improbable." To the extent it constitutes such an attempt, the issue is unpreserved. This court has recently recognized that a claim under *Robbins* "that a particular witness's testimony is inherently improbable is not the same as a claim that the State's evidence is insufficient." *State v. Skinner*, 2020 UT App 3, ¶ 24, 457 P.3d 421; *see also State v. Doyle*, 2018 UT App 239, ¶ 19, 437 P.3d 1266. When a defendant "raises a general sufficiency challenge," he "asks [the] court to examine the evidence, including all inferences that can be reasonably drawn from it, to determine if some evidence exists that could support the verdict." *Skinner*, 2020 UT App 3, ¶ 25 (quotation simplified). In contrast, when making a *Robbins* claim, a defendant asks the court to disregard a particular witness's testimony as "inherently improbable" when determining whether there is sufficient evidence for a conviction. *Robbins*, 2009 UT 23, ¶ 13. Thus, when a defendant raises a *Robbins* claim in the context of a motion for directed verdict arguing insufficiency, he asks the court to

(continued…)

¶46　When reviewing a preserved challenge to a directed verdict ruling, we apply a "highly deferential" standard of review. *State v. Nielsen*, 2014 UT 10, ¶ 30, 326 P.3d 645. Accordingly, to successfully challenge a district court's denial of a motion for directed verdict, a defendant must establish that, when viewed in the light most favorable to the court's ruling, no evidence "exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (quotation simplified). "If there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the [district] court's duty to submit the case to the jury." *Id.* ¶ 33 (quotation simplified).

¶47　Lewis argues the evidence was insufficient to support the verdict because there were inconsistencies between Victim's trial testimony and her statements to Sergeant and Nurse on the night of the assault. With one exception, these alleged inconsistencies do not go to the issue of consent, which was the only contested issue at trial.[6] The sole inconsistency Lewis

---

(…continued)
disregard the witness's testimony "before analyzing the sufficiency of the State's evidence." *Skinner*, 2020 UT App 3, ¶ 27 (quotation simplified). Because Lewis's directed verdict motion was general, asserting only that the State failed "to make a prima facie case on all three counts," he did not preserve any specific inherent improbability claim. Accordingly, to the extent he seeks to raise such a claim now, we decline to address it.

6. For example, Lewis argues that Victim's statements were inconsistent regarding the initiation of the encounter, whether Victim initially passed out, and the order of the vaginal and anal intercourse. None of these inconsistencies go to the disputed issue of consent.

identifies on the issue of consent is between Victim's trial testimony that she did not scream because she was shocked and scared and hurt for her stepsister and Victim's statement to Sergeant on the night of the assault that she told Lewis to "Stop!"[7] But we do not agree with Lewis that these statements necessarily are inconsistent. Because screaming is not the same as telling someone to stop, Victim's testimony that she did not scream because she was frightened and did not want to hurt her stepsister is not inconsistent with her testimony that she told Lewis to stop.

¶48    Moreover, even inconsistent testimony on material issues does not require reversal. The jury serves as the "exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman*, 852 P.2d 981, 984 (Utah 1993); *see also State v. Rivera*, 2019 UT App 188, ¶ 34, 455 P.3d 112 (explaining that "the existence of a conflict in the evidence does not render the totality of the evidence insufficient" (quotation simplified)). Accordingly, we are not entitled to "reweigh the evidence" or "reassess" witness credibility. *Workman*, 852 P.2d at 984. This is particularly true where, as here, the jury could interpret the inconsistencies as the result of Victim's trauma and her distressed emotional state following the assault. *See State v. Kirby*, 2016 UT App 193, ¶ 23, 382 P.3d 644 (recognizing that any discrepancies in an assault victim's account of what happened "could readily be interpreted by the jury as resulting from the trauma she experienced, rather than as suggesting that she was not a credible witness").

---

7. Lewis also points out that during her physical exam, Victim did not tell Nurse that she fought back, screamed, or told Lewis to stop. But the fact that Victim did not volunteer this information to Nurse is not necessarily inconsistent with either of the statements she made about her response to the assault.

¶49  Finally, even if there were material inconsistencies in Victim's statements, substantial evidence corroborated her testimony that she did not consent and that Lewis was at least reckless in assessing the absence of consent. As described above, numerous witnesses testified about Victim's distressed emotional state following the encounter, the evidence from the physical exam suggested lack of consent, and the reasonable inference from Lewis's own trial testimony was that he was too intoxicated to ascertain whether Victim consented to anal intercourse. Although Lewis testified on direct examination that he did not recall whether anal or vaginal intercourse came first, on cross-examination he testified he did not remember engaging in anal intercourse at all.

¶50  After considering the evidence in the light most favorable to the district court's ruling, we conclude there was ample evidence from which a reasonable jury could find that the State met its burden of proving the elements of forcible sodomy beyond a reasonable doubt. We therefore reject Lewis's claim that the evidence was insufficient to support the jury's verdict and affirm the court's denial of his motion for directed verdict.

CONCLUSION

¶51  Lewis's claim that Sergeant's trial testimony improperly bolstered Victim's testimony fails on the merits. He failed to preserve his claim that Detective's trial testimony likewise bolstered Victim's testimony and he has waived the claim. Lewis did not preserve his claims that both Sergeant's and Detective's testimonies contained improper comments on the weight of the evidence, and we conclude the district court did not plainly err in admitting their testimonies. We also conclude the court properly denied Lewis's motion for directed verdict on the forcible sodomy charge.

¶52  Affirmed.

——————