2020 UT App 161

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NATHANIAL LEE JONES,
Appellant.

Per Curiam Opinion
No. 20190675-CA
Filed December 3, 2020

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 181912021

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes and Nathan Jack, Attorneys
for Appellee

Before JUDGES GREGORY K. ORME, DAVID N. MORTENSEN, and
DIANA HAGEN.

PER CURIAM:

¶ 1 Nathanial Lee Jones appeals his convictions for aggravated assault and criminal mischief. Jones claims that "the district court committed reversible error when it admitted testimony that bolstered the credibility of the alleged victim and opined about the weight of the evidence." We affirm.

## BACKGROUND

¶ 2 After receiving two 911 calls from neighbors reporting a possible burglary, a police officer (Officer) went to the Victim's apartment to investigate. When Officer arrived, he saw that the door had obviously been forced open from outside. Officer first

talked to Victim and Jones together in the hallway. Victim explained that the door was damaged on the previous day, that the suspect's name was "Joe," and that a Chromebook laptop was missing. Officer testified that "it did not sit right with me that it happened . . . yesterday" when there had been no police report filed. When Officer asked Victim and Jones why they had not called the police, they said it was because they did not have the serial number of the laptop. The story did not sound credible to Officer because it was very vague and did not include information about the laptop that would normally be provided.

¶ 3      While Jones remained outside, Officer went inside the apartment with Victim. There was no ransacking or evidence consistent with burglary. Victim then told Officer "that it was actually Jones who forced the door open." Officer testified, without objection, about his training and experience in collecting witness statements.

> You want to separate the subject involved. You know, oftentimes people will—don't want to talk in front of the other person, if the other person is in earshot or in eyesight. So a lot of our training in law enforcement is to separate and even to get out of eyesight of the two of them, if you can, like around the corner, just to get the other party to open up and tell you what's going on.

¶ 4      Officer testified that it did not surprise him that Victim's story changed when he was alone with her. But he testified that he still suspected "something was off" because of the way she continued to wear her sunglasses inside, had her hood pulled up, and offered only vague details about the claimed burglary. The court then gave the jury the following cautionary instruction:

> I just want to caution the jury. The testimony that you heard from the officer is just fine, as far as it

goes, but neither this officer nor anyone else can testify about whether another witness is telling the truth or not. That is solely your job as the jury, to decide whether another witness is telling the truth. So he's not testifying about whether she told him the truth or told him a lie.

¶ 5    Officer then testified, without objection, that he told Victim that he believed she was not telling him the truth, "and I got a little stern with her and told her to take the sunglasses off." Victim had a visible bruise under her eye, which she claimed was due to falling off a bike. But she disclosed that she and Jones had gotten into an altercation on November 11, and Jones put his hands around her neck and took her to the ground.

¶ 6    On cross-examination, defense counsel asked Officer about his testimony that he "told the prosecutors that you didn't believe she was telling the truth and you were pressing her on that." Officer agreed that he was "being a little more forceful" with Victim and that he "thought she was lying." Officer also agreed that when he told Victim to take off her sunglasses, it was more of a command than a request. He was wearing his full police uniform. Defense counsel asked what other "directives" Officer gave to Victim, and Officer stated, "I just told her that I believed she was lying to me and to stop lying to me and tell me the truth." Officer agreed that Victim provided more detailed information to him after Jones was arrested.

¶ 7    On redirect examination, the prosecutor asked Officer why he changed his tone at that point in the conversation. Officer began a response by stating that "I had received additional information that substantiated that I wasn't. . . ." At that exact point, defense counsel objected. The district court sustained the objection, directing the jury to "Please disregard that statement." When the redirect examination continued, Officer testified that his training in domestic violence situations played into his change in tone. "You know, from training and

experience in domestic violence situations, you'll get people that want to protect the other party or they're afraid. They don't want to talk." Defense counsel objected to this testimony as constituting speculation. The district court overruled the objection but gave the following cautionary instruction:

> I will overrule the objection, but just caution the jury consistent with what I told you before, that he can talk about his training and experience and why he does certain things, but in terms of assessing whether or not [Victim] was telling the truth, that's your job alone to decide. And neither this witness nor any other witness can testify about whether she told the truth or not.

¶ 8     Following that cautionary instruction, the State continued its redirect examination of Officer, which included the following:

> Q. So if you could, then, just again explain why you changed your tone and if your training and experience played into that decision.
>
> A. It did. I changed my tone that she was lying, I needed her to tell me the truth. I wanted her to take her sunglasses off. A lot of times the eyes will tell a lot about somebody and their emotional state. And with regards to the suspicion from her wearing the sunglasses inside in the first place.
>
> Q. So what does your training and experience tell you with respect to interviewing potential domestic violence victims in terms of what tone you should use?
>
> A. It's a case-by-case thing, right. Some victims won't talk to you no matter what. Some will talk to you.

¶ 9    Defense counsel again objected, arguing that "additional information about victims and how they respond . . . is improper bolstering." In a bench conference, the prosecutor stated that the questions were in response to defense counsel's questions suggesting Officer put answers into Victim's mouth. The court directed the prosecutor to refocus the questions on Officer's training and experience. Answering the rephrased question, Officer testified that when he believed somebody was "not being truthful," "it's common practice for me to get a little more stern, to say, you know, confront that to say, I know you're not telling me—or I believe I know that you're not telling me the truth, and to get them to —I guess more like—the stern voice, more like— more sure that you're not telling me the truth."

¶ 10    When the district court later asked if there were other issues to be addressed, defense counsel stated "concerns about conclusory statements and improper bolstering from the law enforcement officer as to whether or not—his sort of belief about the victim's truthfulness and comparing that to other victims in other cases." The court responded that it had instructed the State's counsel to "reframe the line of inquiry regarding why [Officer] changed his tone in order to indicate that that was sort of consistent with his training and experience and his practice in general approaching these kinds of cases" to avoid any implication that he "was telling the jury that this witness should or shouldn't be believed." The court also had twice instructed the jury "that neither [Officer] nor any other witness can testify about whether or not [Victim] testified truthfully or falsely. And so that message to the jury should have been clear." Finally, the district court noted that "both sides asked questions surrounding why [Officer] changed his tone, why he employed the interview tactics that he did with respect to" Victim, stating that "to the extent that that created any sort of an implication that he was doing something that was improper under the facts and circumstances of this case, it was appropriate for the State to ask questions about that as well."

¶ 11 Jones later moved for a mistrial, arguing that the statement that Officer "received additional information that substantiated what she said" was also improper bolstering of Victim's credibility. The district court denied the motion, reasoning that "[t]his was something that was nipped in the bud very quickly and the jury was promptly instructed to disregard his statement. And so I'm going to . . . deny the motion for a mistrial." The district court reasoned that promptly instructing the jury to disregard the statement was sufficient to cure any prejudice. The court stated, "And it's true the jury could speculate about what [additional information Officer received], but that would only be if they disregard my instruction, and we presume that they follow those kinds of instructions," and "they didn't hear anything that was specific."

¶ 12 The jury returned a verdict convicting Jones of aggravated assault and criminal mischief. Jones timely appealed his conviction.

ISSUE AND STANDARD OF REVIEW

¶ 13 Jones claims that Officer's testimony included multiple instances of improper bolstering and that he preserved these issues for appeal through "repeated objections." In fact, Jones made a timely objection only in response to Officer's testimony on redirect examination regarding his interview of Victim. The first objection was sustained and the second objection was overruled with a cautionary instruction. "We review preserved claims challenging the district court's admission of testimony for an abuse of discretion." *State v. Lewis*, 2020 UT App 132, ¶ 15. Jones did not interpose a timely objection to the remainder of Officer's testimony, and we consider those unpreserved claims only if the defendant identifies an applicable exception to the preservation rule. *See State v. Cegers*, 2019 UT App 54, ¶ 17, 440 P.3d 924.

ANALYSIS

¶ 14    Although rule 608 of the Utah Rules of Evidence "permits testimony concerning a witness's general character or reputation for truthfulness," it "prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Adams*, 2000 UT 42, ¶ 11, 5 P.3d 642 (quotation simplified). Accordingly, admission of testimony that bolsters the credibility of another witness's testimony on a particular occasion is improper. Nevertheless, "[t]rial error requires reversal only if a review of the record persuades the appellate court that without the error there was a reasonable likelihood of a more favorable result for the defendant." *State v. Boyle*, 2019 UT App 28, ¶ 16, 440 P.3d 720. "A reasonable likelihood of a more favorable outcome exists when the appellate court's confidence in the verdict is undermined." *Id.* (quotation simplified).

¶ 15    In S*tate v. Lewis*, 2020 UT App 132, this court reviewed claims of improper bolstering by law enforcement witnesses who testified about variations in the victim's multiple accounts of a sexual assault. Lewis argued the district court erred in admitting testimony from a police sergeant that he claimed impermissibly bolstered Victim's credibility and opined on the weight of the evidence. *See id.* ¶ 15. At trial, a police sergeant testified about his interactions with the victim on the night of the incident and also testified about his training and experience in cases involving sexual assault victims, opining that "based on his training and experience working on between 200 and 300 assault cases, victims' accounts of an incident commonly vary." *Id.* ¶ 11. Lewis objected that such testimony was "essentially testifying that any victim who has a story that's not consistent is still to be believed." *Id.* The district court overruled the objection because the sergeant could answer "based on his training and experience." *Id.*

¶ 16    In *Lewis*, we reviewed our former cases of *State v. Cegers*, 2019 UT App 54, 440 P.3d 924, which found improper bolstering

where a victim's high school counselor opined that she did not believe that the victim had fabricated her allegations; *State v. Stefaniak*, 900 P.2d 1094 (Utah Ct. App. 1995), which found improper bolstering where a social worker stated the victim "seemed to be quite candid"; and *State v. Bragg*, 2013 UT App 282, 317 P.3d 452, which found improper bolstering where an officer testified that the victim appeared "genuine" during her police interview. *Cegars*, 2019 UT App 54, ¶¶ 22–26. In contrast, we noted that the Utah Supreme Court held in *State v. Adams*, 2000 UT 42, 5 P.3d 642, that there was no improper bolstering where a psychologist testified regarding a sexual assault victim's cognitive ability and opined that it was "probably not likely" she "could be coached to tell, or was sophisticated enough to make up, the story alleged [t]here." *Id.* ¶ 25.

¶ 17   In *Lewis*, we concluded that, "[u]like the witnesses in *Cegers*, *Stefaniak*, and *Bragg*, [the sergeant] did not opine about Victim's truthfulness on a particular occasion. Rather, he testified only that in his professional experience, it is not uncommon to see variations in the statements of victims who give multiple accounts of their assault." *Id.* ¶ 26. In each of the cases in which this court held the testimony constituted "impermissible bolstering," the testimony "included the witness's opinion as to the truthfulness of a witness on a particular occasion." *Id.* (quotation simplified). Like the testimony in *Adams*, the testimony at issue in *Lewis* "did not directly opine on Victim's credibility" or "offer a subjective credibility determination that Victim was telling the truth." *Id.* Instead, "[i]t was left to the jury to determine whether Victim was telling the truth in her differing accounts, informed by the knowledge that varying accounts are not uncommon in similar circumstances." *Id.*

¶ 18   As in *Lewis*, here Officer testified regarding his interviewing techniques for domestic violence victims based upon his experience and training and did not opine on the

truthfulness of Victim on a particular occasion. As a result, the testimony did not run afoul of Rule 608.

¶ 19 Even if Jones could successfully argue that the challenged testimony violated rule 608, he cannot demonstrate reversible error unless he demonstrates "that there was an overwhelming probability that the jury was unable to follow the court's instructions, and a strong likelihood that the effect of the evidence was devastating to him." *State v. Mead*, 2001 UT 58, ¶ 50, 27 P.3d 1115 (quotation simplified). In this case, any danger that the jury might misconstrue Officer's testimony as vouching for Victim's credibility was dispelled by the district court's careful cautionary instructions. The district court clearly and repeatedly instructed the jury that the jury was the sole judge of witness credibility and no witness could testify regarding another witness's credibility.

¶ 20 Jones has not demonstrated that the trial court's actions were insufficient to address any claimed prejudice that could have resulted from Officer's statements. In sum, there is no reasonable probability that the jury, given the repeated instructions, would take Officer's testimony out of context and rely on it to draw the prohibited inference that Victim was telling the truth on a particular occasion.

## CONCLUSION

¶ 21 We conclude that there was no error, plain or otherwise, in the admission of Officer's testimony. Moreover, even if Jones could establish a violation of rule 608, the district court's cautionary instructions were sufficient to cure any prejudice. Accordingly, we affirm.

————————